BERNARD N. BORMAN *vs.* CORINNE L. BORMAN
(and a companion case).

Suffolk.   May 9, 1979. — August 16, 1979.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Civil,* Appeal from interlocutory order. *Attorney at Law.*
*Witness,* Attorney as witness.

An order of a Probate Court judge in a divorce proceeding disqualifying as counsel two of the husband's law partners was final for purposes of appeal. [778-781]
An order of a Probate Court judge in a divorce proceeding that the wife should answer all questions at depositions, even those that might require self-incriminatory statements, or have her claims for alimony and division of marital property struck was not a final order for purposes of appeal. [781-785]
In a divorce proceeding, a law firm could not be disqualified from representing the husband simply because the husband was a member of the firm and, as a party litigant, would testify in the proceeding. [785-789]
In a divorce proceeding, a Probate Court judge erred in disqualifying a law firm, of which the husband was a member, from representing the husband merely because the firm had intimate knowledge of the husband's financial capabilities, a matter germane to the issue of alimony, where it appeared that all the evidence on the husband's financial capabilities would be included in his financial statement and he would have no obligation to produce independent

testimony from a member of his firm to verify the information disclosed in the statement. [789-792]

Two LIBELS for divorce filed in the Probate Court for the county of Suffolk on September 17, 1976, and June 30, 1977, respectively.

Certain pretrial motions were heard by *Freedman, J.*

The Supreme Judicial Court granted requests for direct appellate review.

*Bernard N. Borman,* pro se.

*Douglas P. Woodlock* for Corinne L. Borman.

LIACOS, J. The two substantive issues raised by this appeal and cross appeal arose in the pretrial stage of cross actions for divorce. The appeals come to us[1] in advance of a definitive determination of the rights and liabilities in dispute. The husband, Bernard N. Borman, appeals from the order of the Probate Court judge disqualifying as counsel two of his law partners. He argues, in essence, that the judge misapplied S.J.C. Rule 3:22, DR 5-101, DR 5-102, 359 Mass. 796, 814 (1972), the basis for the disqualification order. We agree.

The wife, Corinne L. Borman, appeals from the judge's order that she must answer all questions at depositions, even those that might require self-incriminatory statements, or have her claims for alimony and division of marital property struck.[2] Before us she argues that the judge's choice of sanctions to compel her testimony impermissibly penalized her assertion of her right against

---

[1] Each party applied for direct appellate review as to his or her own appeal. We allowed both applications.

[2] In full, the judge's order provides "that the [wife] at further deposition proceedings shall answer all questions which she previously refused to answer and failing to comply, a) [wife's] claim for alimony and division of marital property shall be stricken from her Complaint for Divorce, b) the [wife] shall reimburse the [husband] for one half the costs of the depositions at which she refused to answer certain questions by taking the Fifth Amendment and c) in all other respects [wife's] Complaint for Divorce shall stand for trial on the merits of all other issues raised thereby."

self-incrimination.[3] Due, however, to the interlocutory
nature of the wife's appeal and the absence of a report or
certification by the judge below, we do not reach this
issue.

The parties to this action, Corinne Borman and Ber-
nard Borman, were married in Boston, Massachusetts, on
August 19, 1962. They have two minor children. On Sep-
tember 17, 1976, the wife filed for divorce on the grounds
of cruel and abusive treatment. The complaint included
claims for custody of the children, alimony, and the con-
veyance of real estate. During the early part of spring,
1977, the wife's complaint was tried to a master. Before
a report issued, the husband, on June 30, 1977, filed a
cross complaint for divorce on the same grounds as al-
leged by the wife. Thereafter, on July 22, 1977, a judge of
the Probate Court revoked the order of reference to the
master.

On September 19, 1977, the husband submitted a for-
mal answer to the wife's complaint.[4] He denied the allega-
tions of cruel and abusive treatment and, further, he
alleged that the wife had been guilty of misconduct with
a third person thereby making her ineligible for alimony.
On September 23, 1977, the husband commenced a depo-
sition of the wife during which he sought to elicit infor-
mation pertaining to his allegation of her misconduct. On
the advice of counsel, the wife asserted her right against
self-incrimination and refused to answer any questions
on the subject.

After considerable delay, apparently caused in part by
efforts to negotiate a settlement, the husband resumed
taking the wife's deposition on August 30 and 31, 1978. As
before, the wife asserted her right against self-incrimina-
tion. With the aid of new counsel, who were two partners

[3] The wife rests her argument on the Fifth Amendment to the
United States Constitution, and art. 12 of the Declaration of Rights of
the Massachusetts Constitution.

[4] The record reveals no explanation for the late filing of this answer.
See Mass. R. Dom. Rel. P. 6 (b), 7 (a), and 12 (a) (1) (1975).

from his law firm (Lane & Altman), the husband, on November 8, 1978, moved to dismiss the wife's claims for alimony and division of property. The grounds stated in this motion were that, by invoking her privilege, the wife had deprived him of the opportunity fairly to present his case or defend against the wife's actions. That same day, the wife filed a motion for leave to take the deposition of the husband's law firm in order to elicit information about the husband's compensation, capital account, retirement benefits and life and health insurance benefits, matters germane to the wife's claim for alimony. In conjunction with this motion, the wife further moved that members of the husband's law firm be disqualified from serving as the husband's counsel on the ground that this representation would violate the ethical precept that an attorney should withdraw as counsel from causes in which he or members of his firm should be called to give testimony. According to the wife, at least two of counsel's partners would give testimony: the husband, as party litigant; and a member of the firm, other than the husband and trial counsel.

After a hearing on November 13, 1978, the judge allowed the wife's motion for leave to take a deposition of Lane & Altman. He allowed the motion to disqualify under DR 5-102(A), finding that none of the enumerated exceptions to the rule applied. At a later date, he issued a memorandum and order conditionally allowing the husband's motion to dismiss the wife's claims for alimony and division of property.[5]

1. *Appropriateness of Review.*

We are met at the outset with the question whether the orders disqualifying the husband's counsel and setting

---

[5] Following these rulings, the husband, proceeding pro se then and since, filed a timely appeal and moved to stay all proceedings. After a hearing, the judge allowed the motion to stay. The wife filed an appeal from the judge's order to disclose. She also filed in the single justice sessions of the Appeals Court and of this court a motion to vacate the stay. In both instances, the latter motion was denied.

forth the consequences of the wife's continued assertion of her right against self-incrimination are properly before us. Under G. L. c. 215, § 9, a party may claim an appeal from decisions of the Probate Court.[6] Under this provision, a party may claim an appeal from interlocutory orders as well as final judgments, but absent a report from the trial judge, G. L. c. 215, § 13, an appeal from an interlocutory order will not be heard by an appellate court until a final judgment has been entered.[7] *Lynde* v. *Vose,* 326 Mass. 621, 622 (1951). See *LaRaia* v. *LaRaia,* 329 Mass. 92, 93 (1952); *Vincent* v. *Plecker,* 319 Mass. 560, 564 (1946). See also G. L. c. 215, § 22. Whether either order appealed from is properly before us depends on whether, at a minimum, the particular order is "final."[8] While the meaning of the word "final" may not always be clear, see *Vincent* v. *Plecker, supra* at 563, the policy underlying this requirement is "that a party ought not to have the power to interrupt the progress of the litigation by piecemeal appeals that cause delay and often waste judicial effort in deciding questions that will turn out to be unimportant." *Id.* at n.1.

*Vincent* also noted by way of dictum the developed doctrine that certain decrees which leave a portion of the controversy undetermined may yet be immediately appealable. "Though part of a single controversy remains

---

[6] General Laws c. 215, § 9, as appearing in St. 1975, c. 400, § 57, provides in pertinent part: "A person aggrieved by an order, judgment, decree or denial of a probate court . . . may, within thirty days after the entry thereof, appeal therefrom to the appeals court or, subject to the provisions of section ten of chapter two hundred and eleven A, to the full court of the supreme judicial court."

[7] General Laws c. 231, § 118, grants parties aggrieved a limited right to an immediate consideration of interlocutory orders (*Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.,* 367 Mass. 464, 467-470 [1975]), but does not apply to the orders of the Probate Court.

[8] Finality does not hinge on the label that is placed on the judge's action. See *Marlborough Hosp.* v. *Commissioner of Pub. Welfare,* 346 Mass. 737, 738 (1964); *Churchill* v. *Churchill,* 239 Mass. 443, 446 (1921); J.F. Lombard, Probate Law and Practice § 2572 n.18 (1962).

undetermined, if the decree is to be executed presently, so that appeal would be futile unless the decree could be vacated by the prompt entry of an appeal in the full court, the decree is a final one." *Id.* at 564 n.2, and cases cited. Under this rule, we have labelled as final the appointment (*Albre* v. *Sinclair Constr. Co.*, 345 Mass. 712, 713 [1963], *Wax* v. *Monks*, 327 Mass. 1, 2-3 [1951]), and continuation (*New England Theatres, Inc.* v. *Olympia Theatres, Inc.*, 287 Mass. 485, 490 [1934], cert. denied sub nom. *E.M. Loew's, Inc.* v. *New England Theatres, Inc.*, 294 U.S. 713 [1935]) of a receiver in a creditor's action; the allowance of a motion to vacate the appearance of contestants in probate matters (*Marcus* v. *Pearce Woolen Mills, Inc.*, 353 Mass. 483, 484-485 [1968]); the appointment of a guardian ad litem in estate settlement proceedings (*Lynde* v. *Vose*, 326 Mass. 621, 622 (1951]); and the dissolution of a partnership in an action for an accounting (*Ferrick* v. *Barry*, 320 Mass. 217 [1946]).

We are of the opinion that the disqualification order is similar in effect to the orders and decrees listed under the doctrine of present execution. We further note that under the collateral order doctrine of *Cohen* v. *Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949), a doctrine closely analogous to our rule of present execution,[9] disqualification orders are conclusive of a party's right to counsel of his choice and are effectively unreviewable on appeal from judgment.[10] We conclude that the husband's appeal

[9] The collateral order doctrine represents a judicial construction of 28 U.S.C. § 1291 (1976), the provision of the Federal code which governs the right to appeal from decisions of the Federal District Court. As such, it does not apply to the States.

[10] E.g., *Schloetter* v. *Railoc of Ind., Inc.*, 546 F.2d 706, 709 (7th Cir. 1976); *In re Investigation Before the April 1975 Grand Jury*, 531 F.2d 600, 605 n.8 (D.C. Cir. 1976); *Draganescu* v. *First Nat'l Bank*, 502 F.2d 550, 551 n.1 (5th Cir. 1974), cert. denied, 421 U.S. 929 (1975) ("an order erroneously depriving a party of its chosen counsel during the course of the trial would . . . frustrate public policy in a way which a post-trial appeal could not mitigate"); *Emle Indus., Inc.* v. *Patentex, Inc.*, 478 F.2d 562, 570 n.5 (2d Cir. 1973); *Richardson* v. *Hamilton Int'l Corp.*,

from the order disqualifying his partners as counsel is properly before us for determination.

In contrast, the wife's appeal is not yet ripe for appellate review. What the wife seeks to have us determine is whether the Probate Court judge may strike her claim for alimony if she refuses to provide allegedly self-incriminating information at depositions. Basically, she contests the judge's choice of discovery sanctions. On the question of ripeness, it matters little whether the issue on appeal is the propriety of a witness's invocation of a privilege or the propriety of the judge's imposition of a particular sanction on the witness's refusal to disclose. In either case, we must determine whether the order challenged is final.

The striking of a claim might be among those discovery sanctions that is final and appealable because it disposes of one or more claims for relief. See 4 Moore's Federal Practice par. 26.83 [7], at 26-601 (2d ed. 1979). The order from which the wife seeks relief does not, however, strike her claim. Rather it warns that unless she answers all questions at future depositions, her claim *will be* struck. The distinction is significant given that the judge might yet decide not to impose that sanction. Indeed, even if he should impose it, he is free to modify any outstanding order at any time before entry of judgment. Mass. R. Dom. Rel. P. 54 (b) (1975). Cf. *Dellums* v. *Powell,* 566 F.2d

---

469 F.2d 1382, 1383 n.1 (3d Cir. 1972), cert. denied, 411 U.S. 986 (1973). The unanimity on this question contrasts with the sharp dispute on whether a denial of a motion to disqualify is appealable. Compare *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corp.*, 496 F.2d 800 (2d Cir. 1974), with *Community Broadcasting of Boston, Inc.* v. *FCC,* 546 F.2d 1022 (D.C. Cir. 1976). See 9 Moore's Federal Practice par. 110.13 [10] (1975 & Supp. 1978-1979). The Second Circuit, which allows appeals from the denial of a motion to disqualify, has recently evinced some regret about its position. See *Allegaert* v. *Perot,* 565 F.2d 246, 247 (2d Cir. 1977); *W.T. Grant Co.* v. *Haines,* 531 F.2d 671, 677-678 (2d Cir. 1976). The motion to disqualify has apparently become a commonly used pretrial tactic which, when denied and immediately appealed, usually results in costly delays.

231, 234 (D.C. Cir. 1977); *Cromaglass Corp.* v. *Ferm*, 500 F.2d 601, 605 (3d Cir. 1974) (en banc).[11] In essence then, the challenged portion of the judge's order is an order to disclose, which does no more than transform discovery from a process involving only the parties to one in which the court has a stake in compliance. As such it does not dispose of one or more claims such that it would be appealable. Mass. R. Dom. Rel. P. 54 (b) (1975).

Furthermore, the wife's appeal does not fit within the doctrine of present execution. Unless and until the husband resumes taking the wife's deposition, the order has no impact on the case. More importantly, review after a definitive determination of rights and liabilities would not be futile. Of course, if the wife decides to comply with the order, confidentiality is forever lost. But she has another choice: noncompliance. Cf. *United States* v. *Ryan*, 402 U.S. 530, 532-533 (1971). If the subsequent imposition of a sanction is error, that error can be readily corrected on appeal without irreparable harm to the wife. That this process might necessitate a new proceeding on the claim of alimony, an integral element of the wife's complaint,[12] is not the kind of harm that triggers the doctrine of present execution.

This result accords with the decisions of the Federal courts which ordinarily classify disclosure orders as interlocutory and unappealable. See *United States* v. *Ryan*, *supra*; *Cobbledick* v. *United States*, 309 U.S. 323 (1940); *Alexander* v. *United States*, 201 U.S. 117, 121-122 (1906). See generally 4 Moore's Federal Practice par. 26.83 [3] (2d

---

[11] There is also the possibility that further deposition of the wife will not be taken should the parties reach a negotiated settlement.

[12] Although our decisions involving the doctrine of present execution have not explicitly held that the doctrine applies only to orders on issues collateral to the controversy, we think such a requirement is implicit on the facts of those cases. E.g., *Marcus* v. *Pearce Woolen Mills, Inc.*, 353 Mass. 483, 484-485 (1968); *Albre* v. *Sinclair Constr. Co.*, 345 Mass. 712, 713 (1963); *Lynde* v. *Vose*, 326 Mass. 621, 622 (1951). Cf. *Ferrick* v. *Barry*, 320 Mass. 217 (1946).

ed. 1979 & Supp. 1978-1979). These cases hold to the view that "[i]t is only when disobedience happens to result in an order punishing criminally for contempt, that a party may have review by appellate proceedings before entry of the final judgment in the cause." *Cogen* v. *United States*, 278 U.S. 221, 223-224 (1929). Although two Federal Circuit Courts. have questioned the validity of this rule, the United States Supreme Court has recognized exceptions and permitted an appeal from a bare order to disclose only in the narrowest of circumstances. See generally 4 Moore's, *supra* at 26.83 [6]. For example, in *Perlman* v. *United States*, 247 U.S. 7, 12-13 (1918), the Court heard an appeal from the issuance of a motion to produce that directed a District Court clerk to deliver certain documents to the grand jury. The appellant owned the documents sought but the District Court clerk had possession. The Court held that the appellant "was powerless to avert the mischief of the order"; his disobedience could not keep the materials from the grand jury. Moreover, it was not likely that the clerk would risk a contempt citation in order to allow for immediate review. In *United States* v. *Nixon*, 418 U.S. 683 (1974), the District Court had directed a subpoena duces tecum at the President of the United States. Unlike *Perlman*, the party under subpoena had a sufficiently vital interest in nondisclosure so that he might risk contempt. Nevertheless, the Court held that the appeal need not await such an occurrence: "To require a President of the United States to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling would be unseemly, and would present an unnecessary occasion for constitutional confrontation between two branches of the Government." *Nixon, supra* at 691. Both *Nixon* and *Perlman* are inapplicable to the case before us. The wife is not powerless to prevent disclosure and obtain a subsequent review if a sanction is imposed. Although imposition of the sanction threatened may raise a significant constitutional question, it would have

none of the institutional ramifications that justified review in *Nixon*. Indeed, there is nothing unique about the setting in which the judge ordered the wife to disclose. "Orders compelling the testimony of witnesses are among the most common of everyday incidents to the process of disposing of cases, and objections on the ground of privilege . . . are frequently raised" (footnote omitted). 4 Moore's Federal Practice par. 26.83 [6], at 26-599 (2d ed. 1979). Accordingly, the order to disclose at issue here is not a final order.

Anticipating that the order from which she sought relief would be deemed interlocutory, the wife urges us to exercise our extraordinary power to grant relief under G. L. c. 211, § 3, or to review the legality of the order entered below by transferring the matter here under G. L. c. 211, § 4A. On occasion, the full court has reviewed the propriety of orders to disclose under each statute. See *Dow Jones & Co.* v. *Superior Court*, 364 Mass. 317 (1973) (§ 4A); *Gilday* v. *Commonwealth*, 360 Mass. 170 (1971) (§ 3); *Kennedy* v. *District Court of Dukes County*, 356 Mass. 367 (1969) (§ 3). In each case cited, interlocutory relief under §§ 3 or 4A was sought initially from the single justice; in each case a single justice reserved and reported the matter. G. L. c. 231, § 112. Accordingly, appellate jurisdiction vested in the full court not because of the invocation of §§ 3 and 4A but because of the reservation and report. These cases do not establish that the appellate jurisdiction of the full court may never rest on our c. 211 powers.[13] They, and other cases,[14] do illustrate that

---

[13] In *Cappadona* v. *Riverside 400 Function Room, Inc.*, 372 Mass. 167 (1977), the plaintiffs appealed, pursuant to G. L. c. 211, § 3, from the denial by a single justice of this court of petitions for relief from an interlocutory order of the Superior Court. We dismissed the appeal because the plaintiff had failed to make out a case for § 3 relief, not because § 3 was an inappropriate vehicle for appeal. But cf. *Corbett* v. *Kargman*, 369 Mass. 971 (1976) (appeal from discretionary denial of G. L. c. 231, § 118, relief).

[14] E.g., *Blaisdell* v. *Commonwealth*, 372 Mass. 753 (1977) (reserva-

the full bench will normally consider whether interlocutory relief under § 3 or § 4A is appropriate after a single justice has first considered the matter. See generally Henn, Civil Interlocutory Appeals in Massachusetts State Courts, 62 Mass. L.Q. 225 (1977). Given that the wife has not first presented her claim for interlocutory relief to a single justice, we decline to exercise our c. 211 powers to consider her claim now. In any event, this does not appear to be an appropriate case in which to exercise such powers, inasmuch as the wife's rights can be fully protected through regular appellate review. See *Rosenberg* v. *Commonwealth*, 372 Mass. 59, 61 (1977).

For the reasons stated above, the wife's appeal is dismissed. We proceed to consider the merits of the husband's appeal.

2. *Order to Disqualify.*

Disciplinary Rule 5-102 (A), 359 Mass. 796, 814 (1972), provides that, subject to certain exceptions, a lawyer, who learns that he "ought to be called as a witness on behalf of his client, . . . shall withdraw from the conduct of the trial." The rule also requires vicarious disqualification: all members of a firm must refuse or withdraw from employment that any one member could not accept.[15] See

---

tion and report by single justice); *Rosenberg* v. *Commonwealth*, 372 Mass. 59 (1977) (same); *Kargman* v. *Superior Court*, 371 Mass. 324 (1976) (appeal from denial of relief by single justice); *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525 (1974) (same); *Whitmarsh* v. *Commonwealth*, 366 Mass. 212 (1974) (reservation and report by single justice); *Corey* v. *Commonwealth*, 364 Mass. 137 (1973) (same); *Myers* v. *Commonwealth*, 363 Mass. 843 (1973) (same). See also *Beckman* v. *Commonwealth*, 377 Mass. 810 (1979).

[15] DR 5-102 (A), 359 Mass. 796, 814 (1972), provides in full: "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101 (B) (1) through (4)."

DR 5-101 (B) (1)-(4) provides in full: "A lawyer shall not accept

generally ABA Comm. on Professional Ethics, Opinions, No. 50 (1931). Disciplinary Rule 5-102 (A) purportedly serves a variety of purposes. The ultimate concern about the testifying advocate is, in Professor Wigmore's view, that the public might think that the lawyer is distorting the truth for his client. 6 J. Wigmore, Evidence § 1911 (Chadbourn rev. 1976). This possibility has ramifications not only for the profession but for the client as well. According to the ABA Code of Professional Responsibility, EC 5-9 (1978),[16] "[i]f a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness."[17] See ABA Comm. on Ethics and Professional Responsibility, Opinions, No. 339 (1975). Accord, Sutton, The Testifying Advocate, 41 Tex L. Rev. 477, 482 (1963). The ethical problems are especially serious when the outcome of the case may

employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

[16] The "Ethical Considerations" of the ABA Code including EC 5-9, were not adopted by this court "as a rule" but they form "a body of principles" on which the "Disciplinary Rules," as adopted, "are to be interpreted." S.J.C. Rule 3:22 (2), 359 Mass. 796 (1972).

[17] For a different view as to the purposes of the rule regulating the testifying advocate, see Enker, The Rationale of the Rule that Forbids a Lawyer to be Advocate and Witness in Same Case, 1977 Am. B. Foundation Research J. 455; Note, The Advocate-Witness Rule: If Z, then X. But Why?, 52 N.Y.U.L. Rev. 1365, 1397-1400 (1977); Comment, The Rule Prohibiting an Attorney From Testifying at a Client's Trial: An Ethical Paradox, 45 U. Cin. L. Rev. 268, 272 (1976). See generally *People* v. *Superior Court,* 86 Cal. App. 3d 180, 196-203 (1978).

turn on counsel's credibility as a witness. *Black* v. *Black*, 376 Mass. 929 (1978). See also *Commonwealth* v. *Rondeau, ante* 408, 413-415 (1979). Although the impact on the client, trial, and public lessens when the attorney-witness is not himself trial counsel but only a member of trial counsel's firm, there is an impact nonetheless. See *Comden* v. *Superior Court*, 20 Cal. 3d 906, 912, cert. denied, 439 U.S. 981 (1978). But see Enker, The Rationale of the Rule that Forbids a Lawyer to be Advocate and Witness in the Same Case, 1977 Am. B. Foundation Research J. 455, 465.

Notwithstanding the purposes served, application of the rule may have harsher consequences for the client than the continued service of the attorney. Most obviously, the rule may deny a litigant of the right to counsel of his choice. G. L. c. 221, § 48. Cf. 28 U.S.C. 1654 (1976); *W.T. Grant Co.* v. *Haines*, 531 F.2d 671, 677 (2d Cir. 1976). When disqualification occurs after employment has begun, it temporarily (and possibly permanently) disables the litigant in his effort to prosecute a claim or mount a defense. It is not surprising therefore that the code has been used increasingly as a catalog of pretrial tactics.[18] When needless disqualification occurs as a result of these tactics, the very rules intended to prevent public disrespect for the legal profession foster a more dangerous disrespect for the legal process. We therefore take this opportunity to state that first and foremost, the code is self-executing. We expect lawyers to know and comply with its provisions. If an attorney is unsure whether in a given case his conduct violates the code, he should terminate the questionable conduct or seek the advice of the appropriate Committee on Ethics and Professional Responsibility. If he persists in questionable conduct, he

---

[18] For cases that detail the growing use of the code as a weapon in litigation, see *Allegaert* v. *Perot*, 565 F.2d 246 (2d Cir. 1977); *W.T. Grant Co.* v. *Haines*, 531 F.2d 671, 677-678 (2d Cir. 1976); *J.P. Foley & Co.* v. *Vanderbilt*, 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J., concurring).

risks disciplinary action including disbarment. When a
lawyer, exercising his best judgment, determines that his
employment will not bring him into conflict with the
code, disqualification may occur only if the trial court
determines that his continued participation as counsel
taints the legal system or the trial of the cause before it.
See *W.T. Grant Co.* v. *Haines, supra; Greenbaum-Moun-
tain Mortgage Co.* v. *Pioneer Nat'l Title Ins.*, 421 F. Supp.
1348, 1353 (D. Colo. 1976); *Comden* v. *Superior Court, su-
pra* at 919 (Manuel, J., dissenting). But cf. *Freeman* v.
*Kulicke & Soffa Indus., Inc.*, 449 F. Supp. 974, 977 (E.D.
Pa. 1978), aff'd, 591 F.2d 1334 (3d Cir. 1979). With these
principles in mind we turn to the record in the instant
case.

In the hearing below on her motion to disqualify, the
wife maintained that Lane & Altman's representation of
the husband violated DR 5-102 in two respects.[19] First, she
claimed it should have been obvious to Lane & Altman
that a member of the firm, namely the husband, ought to
testify. Second, because the firm had intimate knowledge
of the husband's financial capabilities, a matter germane
to the issue of alimony, it should have also been obvious
that a member of the firm, other than the husband, ought
to testify. The judge granted the motion without indicat-
ing whether he considered the disqualifying witness-ad-
vocate to be the husband or the member(s) of the firm who
"ought" to testify on the husband's financial capabilities.
We examine application of the rule on this record in both
contexts.

To apply DR 5-102 when the testifying advocate is a
litigant in the action miscomprehends the thrust of the
rule. Disciplinary Rule 5-102 regulates lawyers who
would serve as counsel and witness for a party litigant. It
does not address that situation in which the lawyer *is* the
party litigant. Any perception by the public or determina-

---

[19] In her motion, the wife had also alleged a violation of DR 5-101,
but did not argue the point at the hearing.

tion by a jury that a lawyer litigant has twisted the truth surely would be due to his role as litigant and not, we would hope, to his occupation as a lawyer. See *International Elecs. Corp.* v. *Flanzer,* 527 F.2d 1288, 1294 (2d Cir. 1975). As a party litigant, moreover, a lawyer could represent himself if he so chose.[20] G. L. c. 221, § 48. Implicit in the right of self-representation is the right of representation by retained counsel of one's choosing. A party litigant does not lose this right merely because he is a lawyer and therefore subject to DR 5-102.[21] Consequently, Lane & Altman cannot be disqualified simply because the husband, as a party litigant, will testify.

The wife's second ground for requesting disqualification — that a member of the firm other than the husband ought to testify on the husband's financial capabilities — presents a more substantial question.[22] Unlike the situation in which a lawyer clearly intends to perform the dual role of witness and advocate, the allegedly offending counsel here has no intention of taking the stand. The

[20] See, e.g., Op. 353, 46 N.Y. St. B.J.623 (1974); Informal Op. 196, Va. St. B., Dig. B.A. Ethics Opinions, par. 10123 (Maru ed. Supp. 1975). Cf. *International Elecs. Corp.* v. *Flanzer,* 527 F.2d 1288, 1295 (2d Cir. 1975); *Harrison* v. *Keystone Coca-Cola Bottling Co.,* 428 F. Supp. 149, 152 (M.D. Pa. 1977).

[21] See *Harrison* v. *Keystone Coca-Cola Bottling Co., supra*; Ethics Opinions, No. 74-6, Neb. St. B., Dig. B.A. Ethics Opinions, par. 8771 (Maru ed. Supp. 1975); Ethics Opinions, No. 368, 37 Tex. B.J. 526 (1974). Cf. *International Elecs. Corp.* v. *Flanzer, supra* (lawyer litigant was former partner of firm representing him).

[22] The wife's argument makes no distinction between DR 5-102 (A) dealing with the situation where counsel "or a lawyer in his firm ought to be called as a witness *on behalf of his client*," and DR 5-102 (B), dealing with the situation where counsel "or a lawyer in his firm may be called as a witness *other than on behalf of his client*" (emphasis supplied). The wife's motion to disqualify did not specify which part of DR 5-102 was relied on. DR 5-102 (B), unlike DR 5-102 (A), provides that a lawyer "may continue the representation until it is apparent that his testimony is or may be prejudicial *to his client*" (emphasis supplied). See *People* v. *Superior Court, supra* at 190-192. The record before us is totally devoid of any showing of such prejudice to the client husband.

wife correctly states that application of the rule depends not on whether the attorney will be called, but whether he ought to be called. *J.P. Foley & Co.* v. *Vanderbilt*, 523 F. 2d 1357, 1359 (2d Cir. 1975). This formulation of the rule's application does not mean, however, that disqualification is required in every situation in which counsel could give testimony in support of his client on other than formal or uncontested matters. See ABA Code of Professional Responsibility, EC 5-10. On the contrary, it has generally meant that a lawyer may not withhold crucial testimony from his client because he prefers to continue as counsel.[23] Where it has been unlikely that the lawyer would be called because the client whom he represented could support his contentions by other means, then courts have permitted the attorney to remain as counsel. See *J.D. Pflaumer, Inc.* v. *Department of Justice*, 465 F. Supp. 746, 748 (E.D. Pa. 1979); *Smith* v. *Arc-Mation, Inc.*, 402 Mich. 115, 118-119 (1978). Cf. *Universal Athletic Sales Co.* v. *American Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 539-540 n.21 (3d Cir. 1976), cert. denied sub nom. *Super Athletics Corp.* v. *Universal Athletic Sales Co.*, 430 U.S. 984 (1977) (dictum).

The question remains, how are courts to determine whether counsel ought to testify when there is a dispute between the parties on that issue? The issue might be left to the discretion of the trial judge. See *Comden* v. *Superior Court, supra* at 913. We think the better approach however is for the judge to defer to the best judgment of counsel and his client. *J.D. Pflaumer, Inc.* v. *Department of Justice, supra* at 747. In *Pflaumer*, the court suggests three reasons why, in good faith disputes, deference should be paid to the judgment of the counsel whose disqualification is sought. First, the attorney and client are

___

[23] See *J.P. Foley & Co.* v. *Vanderbilt*, 523 F.2d 1357 (2d Cir. 1975); *United States ex rel. Sheldon Elec. Co.* v. *Blackhawk Heating & Plumbing Co.*, 423 F. Supp. 486 (S.D.N.Y. 1976); *Comden* v. *Superior Court*, 20 Cal. 3d 906, 913, cert. denied, 439 U.S. 981 (1978).

in the best position to determine the necessity of counsel's testimony. Second, counsel and client face harsh consequences if counsel continues while possessed of crucial testimony: the lawyer's testimony might be inadmissible; counsel might be subject to disciplinary action for violations of the code.[24] Third, "if it is [counsel's and client's] best judgment that they can get by without testimony from counsel, then it is certainly not up to defendants to urge upon them a different plan of presentation that would necessitate disqualification." *Id.* See also *Smith* v. *Arc-Mation, Inc., supra.* Only when a present intention to forgo the testimony of counsel appears obviously contrary to the client's interests, e.g., his hope of success in the action, should the judge reject counsel's best judgment in the matter and order disqualification. If the question is close, the proceedings are still in the discovery stage, and the judge is unable to determine whether the client will need counsel's testimony, determination may be deferred until more is known. See *Miller Elec. Constr., Inc.* v. *Devine Lighting Co.*, 421 F. Supp. 1020, 1023-1024 (W.D. Pa. 1976).

When applied to the record before us, these principles require the conclusion that the order to disqualify was error. All the evidence on the husband's financial capabilities necessary to determine support and division of the estate will be included in the husband's financial statement, which is required by Rule 401 of the Probate Courts, as amended (1977).

To the extent that the husband made representations that his fortunes with his firm are declining, these representations will or will not be borne out by the figures contained in his financial statement and the appendix thereto. He has no obligation to produce independent testimony to verify various aspects of the information disclosed. The cases cited by the wife do not indicate otherwise. This does not mean the wife may not contest the

---

[24] See also *W.T. Grant Co.* v. *Haines*, 531 F.2d 671, 677 (2d Cir. 1976).

veracity of the disclosure by calling a witness from Lane & Altman. We have recognized that, subject to certain conditions (*Kendall* v. *Atkins* 374 Mass. 320, 324-325 [1978]), a party may call opposing counsel. But in such cases, "the party who calls the witness has no right to require him to withdraw as counsel." *Id.* at 324, and cases cited. There must be a showing first that counsel's testimony on behalf of the opponent will be prejudicial to counsel's client.[25] The wife filed her motion even before knowing what the testimony of a witness from Lane & Altman would be. No showing of prejudice has been made here. Accordingly, the firm should be permitted to continue its representation of the husband.

To sum up: The wife's appeal is dismissed. As to the husband's appeal, we vacate the order of disqualification.[26]

*So ordered.*

---

[25] See, e.g., *Freeman* v. *Kulicke & Soffa Indus., Inc.*, 449 F. Supp. 974 (E.D. Pa. 1978), aff'd 591 F.2d 1334 (3d Cir. 1979); ABA Comm. on Ethics and Professional Responsibility, Opinions, No. 339 (1975); Ethical Opinions, No. 76-22, 61 Mass. L.Q. 233 (1977).

[26] As a final comment, a review of the record before us, which relates only to the issues sought to be raised on appeal, shows that the parties have spent an undue amount of time on preliminary maneuvering prior to trial. Such tactics have consumed almost three years, and not only are a detriment to the parties themselves, causing needless expense and delay, but unduly infringe on the time of the courts. There appears no reason why this case cannot be promptly disposed of by settlement or by proceeding to trial on the merits to obtain a final determination of this dispute.