Louis RIZZO, Plaintiff,

v.

SEARS, ROEBUCK AND
COMPANY, Defendant.

Civ. A. No. 88–1992–N.

United States District Court,
D. Massachusetts.

June 29, 1989.

Paul Nyler, Paul Nyler & Associates, Framingham, Mass., for plaintiff.

Henry A. Sullivan, Mintz, Levin, Cohen, Ferris, Glovsky & Popeo, Boston, Mass., for defendant.

ORDER ON DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

JOYCE LONDON ALEXANDER,
United States Magistrate.

Plaintiff Louis Rizzo ("plaintiff") originally filed this action in August of 1988 against defendant Sears, Roebuck and Company ("Sears") for damages in the amount of $6,500 in severance pay, plus interest, attorney's fees and costs. The complaint alleges that Sears, without any warning or notice, terminated Rizzo from his employment performing light duty work at Sears' Dorchester Warehouse in breach of a promise that such light duty work would continue until the warehouse closed. The complaint further alleges that Sears' actions constituted discrimination in order to avoid payment of benefits to which Rizzo was entitled and constituted a violation of federal statute 29 U.S.C. § 1140 (1982) (ERISA).

The instant action is now before this Court on motions concerning attorney Paul Nyer's involvement as counsel for Rizzo. On July 22, 1987, in the course of his employment at Sears' Dorchester Warehouse, Rizzo injured his elbow, which left him unable to work for a period of time. Sometime following this injury, Rizzo retained Nyer to represent his interests in his workmen's compensation claim against Sears. As part of his representation of Rizzo, Nyer contacted Sears' personnel office concerning Rizzo's return to work while he was still suffering from an injury to his elbow. Through a telephone conversation with some unnamed person at Sears, Nyer learned that light duty work was available. Nyer inquired as to the description and duration of such light duty work, and by letter dated September 1, 1987, Nyer was informed that "the description of light duty is sweeping, dusting and labeling which can be performed one handed," and that "this light duty is available for at least one month."

Following a failure by Rizzo to report to a scheduled medical examination with Sears' doctors, Robert Santucci, a person-

nel manager with Sears, notified Rizzo that he must either report for a medical examination or return to work, or risk termination. In response to this letter, Nyer contacted Mr. Santucci in an effort to have Sears commit to writing 1) that Rizzo would return to work only to perform light duty work, and 2) if there was no light duty work, he would be sent home and continue on compensation. Sears refused to put anything in writing.[1]

Based on representations of Sears, Rizzo states he decided to return to work on or about November 23, 1987. Upon his return to work, Rizzo filled out a Leave Preference Form due to the scheduled closing of the warehouse on January 29, 1988. Rizzo indicated his preferred date of leave as January 8, 1988. On December 21, 1987, Sears dismissed Rizzo from his employment. Rizzo states that he was told there was no more light duty work available. As a result of this early termination, Rizzo allegedly was not eligible to receive approximately $6,000 in severance benefits due employees pursuant to their collective bargaining agreement with Sears. Rizzo thereupon retained Nyer to initiate this action against Sears.

On April 12, 1989, Sears deposed Rizzo. Following this deposition, Sears claims it became obvious that Rizzo's attorney ought to be called to give testimony in this case. Sears contends that Nyer is the only person who could possibly provide evidence supporting Rizzo's claims.

The instant motions derive directly from Sears' subpoena to depose Nyer on May 24, 1989. Sears has moved to disqualify Nyer as counsel for Rizzo pursuant to Supreme Judicial Court Rule 3:07, DR 5–102(A)[2] based on Sears' assertion that Nyer ought to be called as a witness in this case. In

turn, Rizzo has moved for a protective order in the matter of the deposition of Nyer. Rizzo asserts that all communications between him and Nyer are protected by attorney-client privilege. Furthermore, Rizzo contends a deposition of Nyer in this matter would be highly redundant because Sears already has in its custody and control all the evidence upon which plaintiff will rely to make his case. For the very reason that he can support his case by means other than the testimony of Nyer, Rizzo also requests the Court not to disqualify Nyer as his attorney in this matter.

*The Rule of Disqualification*

When acting upon a motion to disqualify an attorney, the court usually proceeds with deliberate caution. *See, e.g., Borman v. Borman,* 378 Mass. 775, 393 N.E.2d 847 (1979). *See also, Serody v. Serody,* 19 Mass.App. 411, 413, 474 N.E.2d 1171, 1173 (1985). This caution is attributed to several concerns courts share when applying the rule. Foremost among these concerns is that disqualification "may deny a litigant of the right to counsel of his choice." *Borman, supra,* 378 Mass. at 787, 393 N.E.2d at 855. Another concern is the "high costs of attorney disqualification on litigants and on the court system." *Gorovitz v. Planning Board of Nantucket,* 394 Mass. 246, 250, 475 N.E.2d 377, 380 (1985). "When disqualification occurs after employment has begun, it temporarily (and possibly permanently) disables the litigant in his effort to prosecute a claim or mount a defense." *Borman, supra,* 378 Mass. at 787, 393 N.E.2d at 855. Similarly, "court resources are sorely taxed by the increasing use of disqualification motions as harassment and dilatory tactics." *Gorovitz, supra,* 394 Mass. at 250, 475 N.E.2d at 380 (n. 7). In this regard, another concern of the court is

---

**1.** Sears' notes of this conversation, plus other communications with Nyer and/or Rizzo, are documented in Rizzo's personnel file and were submitted, along with the letter dated September 1, 1987 describing light duty work, as exhibits by the plaintiff.

**2.** Supreme Judicial Court Rule 3.07 DR 5–102(A) provides in full:
If, after undertaking employment in contemplated or pending litigation, a lawyer learns

or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue in the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

whether "the Cannons of Ethics are ... being brandished for tactical advantage." *Serody, supra,* 19 Mass.App. at 414, 474 N.E.2d at 1174.

Further trepidation on the part of courts to disqualify counsel stems from their view of the procedure as a measure of last resort. *See, e.g., Borman, supra,* 378 Mass. at 787–788, 393 N.E.2d at 856; *W.T. Grant Company v. Haines,* 531 F.2d 671, 677 (2d Cir.1976); *Greenebaum Mountain Mortgage Company v. Pioneer National Title Insurance,* 421 F.Supp. 1348, 1353 (D.Colo. 1976). The Court in *Greenebaum Mountain Mortgage Company, supra,* declared that "sanctions should not be imposed, especially the sanction of complete disqualification ... unless the claimed misconduct in some manner taints the underlying trial or the legal system." 421 F.Supp. at 1353. The Court in *Borman, supra,* explained its reluctance to invoke the rule this way:

> First and foremost, the code is self-executing. We expect lawyers to know and comply with its provisions. If an attorney is unsure whether in a given case his conduct violates the code, he should terminate the questionable conduct or seek the advice of the appropriate Committee on Ethics and Professional Responsibility. If he persists in questionable conduct, he risks disciplinary action including disbarment.

378 Mass. at 787–788, 393 N.E.2d at 856. If an attorney in "his best judgment" decides not to remove himself, then the *Borman* Court similarly viewed disqualification as appropriate only when the attorneys continued participation would "taint the legal system or the trial of the cause before it." *Id.* Indeed, the Court in *Serody, supra,* stated that the only "paradigm for compelled withdrawal of counsel" is when the lawyer as witness has testimony to give against his client. 19 Mass.App. at 413, 474 N.E.2d at 1173.

■ The Court in *American Hospital Supply Corporation v. Roy Lapidus, Inc.,* 493 F.Supp. 1076 (D.Mass.1980), found sufficient facts to warrant application of the disqualification rule where the attorney "because of his active role in the sale [of his client's company and patent to the plaintiff], which is the subject matter of the [current] litigation, [had] sufficient personal knowledge of material facts that he ought to be called as a witness." *Id.* at 1078. However, just because an attorney ought to be called as a witness does not mean that disqualification is required in every situation. *Borman, supra* 378 Mass. at 790, 393 N.E.2d at 857. The *Borman* Court observed that "where it has been unlikely that the lawyer would be called because the client whom he represented could support his contentions by other means, then courts have permitted the attorney to remain as counsel." *Id. See J.D. Pflaumer, Inc. v. Department of Justice,* 465 F.Supp. 746, 748 (E.D.Pa.1979); *Smith v. Arc–Mation, Inc.,* 402 Mich. 115, 118–119, 261 N.W.2d 713 (1978). *Cf. Serody, supra,* 19 Mass.App. at 414, 19 Mass. App. at 1174 ("If ... the evidence sought from opposing counsel could as easily be adduced through others, or the lawyers testimony would be merely cumulative or marginally relevant, it may be desirable to exclude the proffered evidence or to admit the evidence and let the lawyer-witness stay in the case.").

Nevertheless, in the situation where a court must determine whether an attorney ought to be called as a witness the *Borman* court acknowledged a preference "to defer to the best judgment of counsel and client ... when the present intention to forgo the testimony of counsel [does not appear] obviously contrary to the client's interests." 378 Mass. at 790–791, 393 N.E.2d at 357.

■ It is against this backdrop that this Court rules on the instant motions. Although Nyer's representation of Rizzo in his previous workmen's compensation claim against Sears places Nyer directly in the middle of pivotal events in this case, and, as a result, Nyer may have personal knowledge of matters material to this case, this Court opines that a deposition of Nyer would not be necessary to achieve a fair resolution of this case. At this stage, a deposition of Nyer could only corroborate facts already in the possession of Sears. The only testimony Nyer could possibly give would either corroborate the fact he

had conversations on behalf of Rizzo with certain employees of Sears, or identify letters addressed to either him or his client. The substance of these communications should not be of any secret to Sears since Sears was party to all of them. Furthermore, Rizzo has stated that he intends to prove his two claims by use of those documents already in the possession and control of Sears. Here, Rizzo has made a tactical decision not to proffer the personal knowledge of Nyer to support his case.

This Court finds that under the circumstances present in this case, deference to this decision by Rizzo and his counsel would not be obviously contradictory to Rizzo's interests. Furthermore, this Court finds that the continued participation of Nyer as counsel for Rizzo in this case would neither taint the legal system nor taint the underlying trial. Accordingly, disqualification of Nyer is unjustified and unwarranted on the facts of their case.[3]

Based on the foregoing, this Court orders that defendants' motion to disqualify plaintiff's counsel be and is hereby denied. Concomitant therewith, plaintiff's motion for protective order in the matter of the deposition of attorney Nyer is hereby allowed.

---

**3.** Counsel for Sears, in their wisdom, may desire to call Nyer as a witness for the purpose of contesting evidence offered by Rizzo. "Subject to certain conditions (*Kendall v. Atkins,* 374 Mass. 320, 323–324, 372 N.E.2d 764, 767 (1978)), a party may call opposing counsel. But in such cases, 'the party who calls the witness has no right to require him to withdraw as counsel.'" *Borman, supra,* 378 Mass. at 792, 393 N.E.2d at 858 (quoting *Kendall, supra,* 374 Mass. at 324, 372 N.E.2d at 767).