**Berta Maidanik SIGUEL, Plaintiff,**

v.

**ALLSTATE LIFE INSURANCE CO., Defendant.**

**Civ. A. No. 91–10933–K.**

United States District Court,
D. Massachusetts.

March 23, 1992.

**394**

Edward Siguel, Brookline, Mass., for plaintiff.

Craig R. Brown, Leslie Feldman–Rumpler, Fitch, Wiley, Richlin & Tourse, P.C., Boston, Mass., for defendant.

## ORDER RE: MOTION FOR DISQUALIFICATION OF EDWARD SIGUEL AS PLAINTIFF'S ATTORNEY

### *(DOCKET ENTRY # 74)*

BOWLER, United States Magistrate Judge.

On February 18, 1992, defendant Allstate Life Insurance Company, filed a motion to disqualify plaintiff's counsel, Edward N. Siguel ("Mr. Siguel"). (Docket Entry # 74). Prior thereto, this court brought the matter of Mr. Siguel's disqualification to the parties' attention at a status conference held on February 4, 1992.[1]

On March 10, 1992, this court heard argument on the motion and took the matter under advisement.

## BACKGROUND

Plaintiff, Berta Maidanik Siguel, brought this action against defendant as a result of defendant's failure to honor an accidental death insurance policy issued on the life of plaintiff's deceased husband, Isidoro Siguel. The policy was in effect on February 10, 1988, the date of Isidoro Siguel's death. Plaintiff, who is also the mother of Mr. Siguel, is the beneficiary of the policy. (Docket Entry ## 31, 53). Plaintiff asserts claims for breach of contract, misrepresentation and violations of Massachusetts General Laws chapter 93A. (Docket Entry # 31).

Shortly before his death, Isidoro Siguel accidentally injured his arm while traveling by bus in Argentina, according to plaintiff. (Docket Entry # 31). On February 10, 1988, a "Dr. Pattin" treated Isidoro Siguel and drained an abscess in his arm at the Hospital Fernandez in Buenos Aires, Argentina. He died approximately three hours after receiving the treatment from Dr. Pattin. (Docket Entry # 31).

---

1. On February 10, 1992, the district judge held a status conference during which the parties dis-

cussed Mr. Siguel's disqualification. (Docket Entry # 72).

The cause of Isidoro Siguel's death is hotly disputed. Plaintiff maintains that Isidoro Siguel died as a result of the accidental injury to his arm incurred while traveling on a common carrier. Defendant denies these allegations and refuses to pay benefits under the policy.

In support of disqualification, defendant argues that the testimony of Mr. Siguel is central to the case at bar. In answer to interrogatories, plaintiff states that Mr. Siguel "handled all aspects of the accidental death policy." She further avers that "all communications with Allstate were made by my son." (Docket Entry #75, Ex.A). By affidavit, Mr. Siguel confirms that he has personal knowledge of the events leading to the death of his father. (Docket Entry #11, Ex.A).[2]

Mr. Siguel also apparently typed and prepared a report, signed by Dr. Pattin, concerning the circumstances of Isidoro Siguel's death. Dr. Pattin is now deceased and the parties dispute the authenticity of this report. (Docket Entry #70, Ex.A).

Defendant therefore argues that DR 5–101(B) and DR 5–102(A) of the Model Code of Professional Responsibility, S.J.C. Rule 3:07, require Mr. Siguel's disqualification. Plaintiff counters that Mr. Siguel's testimony, if any, will relate to minor procedural matters. Furthermore, she contends that disqualification will work a substantial hardship. Plaintiff cites the added cost of obtaining substitute counsel and Mr. Siguel's unique expertise with the subject matter. Specifically, plaintiff points to Mr. Siguel's degrees in law, medicine, and probability/survival theory, his training in causes of death and information processing and his computer skills. (Docket Entry #78).

## DISCUSSION

Defendant moves for disqualification under Disciplinary Rule 5–101(B) and 5–102(A), Model Code of Professional Responsibility, S.J.C. 3:07. (Docket Entry ##74, 75). Disciplinary Rule 5–101(B), Model Code of Professional Responsibility, S.J.C. 3:07 ("DR 5–101(B)"), dictates that counsel may not *accept* employment if it is obvious that counsel ought to be called as a witness.[3] Disciplinary Rule 5–102(A), Model Code of Professional Responsibility, S.J.C. Rule 3:07 ("DR 5–102(A)"), requires disqualification if, *after* undertaking employment, counsel learns or it is obvious that he ought to be called as a witness.[4] *See Borman v. Borman*, 378 Mass. 775, 393 N.E.2d 847, n. 22 (1979).

DR 5–101(B)(1)–(4) describes four exceptions under which testimony is permitted. DR 5–102(A) incorporates these exceptions. The pertinent exception is subpart (4) which allows continued representation "if refusal would work a *substantial hardship* [emphasis added] on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." DR 5–101(B)(4).

This court has the inherent power and the duty to supervise and, if necessary, disqualify attorneys who appear before it.

2. For example, before Dr. Pattin died, he told Mr. Siguel that his father's death was unexpected and that there was physical evidence of an accidental injury. (Docket Entry #11, Ex.A).

3. Model Code of Professional Responsibility DR 5–101(B), S.J.C. Rule 3:07, therefore addresses the issue of disqualification prior to acceptance of employment when an attorney knows or it is obvious that he ought to be called as a witness. The rule provides as follows:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake employment and he or a lawyer in his firm may testify:

... (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

4. Model Code of Professional Responsibility DR 5–102(A), S.J.C. Rule 3:07, provides that:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B), (1) through (4).

*Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir.1984). The issue of whether a lawyer should accept employment under DR 5–101(B) or continue employment under DR 5–102(A) if he ought to be called as a witness raises similar, if not identical, ethical considerations. *See* Ethical Consideration 5–10.[5] The principal ethical objections to a lawyer testifying on behalf of his client regarding contested issues are that the client's case will "be presented through the testimony of an obviously interested witness who is subject to impeachment on that account; and that the advocate is, in effect, put in the unseemly position of arguing his own credibility." ABA Committee on Ethics and Professional Responsibility, *Formal Op. 339* (1975) (discussing the substantial hardship exception to DR 5–101(B) and DR 5–102(A)). In this instance, Mr. Siguel's testimony is all the more suspect because of his familial relationship to the plaintiff and the insured. His credibility is not a minor matter, as evidenced by the prior and ongoing disputes concerning his affidavits and his deposition testimony.

■ One of the paradigms for compelled disqualification is when a lawyer/witness will testify against his client. *Rizzo v. Sears, Roebuck and Company*, 127 F.R.D. 423, 425 (D.Mass.1989) (citing *Serody v. Serody*, 19 Mass.App. 411, 474 N.E.2d 1171, 1173 (1985)). Although there are degrees of adverse testimony, there are few, if any, situations that justify acceptance or continued employment in this circumstance. ABA Committee on Ethics and Professional Responsibility, *Formal Op. 339* (1975). Although Mr. Siguel contends his testimony will be favorable, his testimony is nevertheless subject to cross examination.

An additional concern is whether plaintiff can obtain testimony from other sources. "If ... the evidence sought from opposing counsel could as easily be adduced through others, or the lawyer's testimony would be merely cumulative ... it may be desirable to exclude the proffered evidence or to admit the evidence and let the lawyer-witness stay in the case." *Serody v. Serody*, 474 N.E.2d at 1174. Because of the deaths of Dr. Pattin and Isidoro Siguel, it is unclear whether, absent stipulation, plaintiff can support the authenticity of Dr. Pattin's report through means other than her counsel's testimony.

■ Finally, although Mr. Siguel emphasizes his expertise and familiarity with this litigation, disqualification does not preclude him from consulting with new counsel. *Connell v. Clairol*, 440 F.Supp. 17, 19 (N.D.Ga.1977) (Disciplinary Rules do not prevent consultation with substitute counsel at any stage other than in open court). In a civil case, it is "more important that unethical conduct be prevented than that [plaintiff] have an unfettered right to counsel of its choice." *Kevlik v. Goldstein*, 724 F.2d at 849.

■ This court, however, recognizes the financial hardship of obtaining substitute counsel. Disqualification will also deprive plaintiff the counsel of her choice. *See Serody v. Serody*, 474 N.E.2d at 1174 (recognizing concerns of added expense and deprivation of counsel of choice).

The issue of disqualification is therefore close. Because the proceedings are still in discovery, this court defers the matter of disqualification until a later date. *See Borman v. Borman*, 393 N.E.2d at 857–856 (determination may be deferred until more is known); *Srebnick v. Lo–Law Transit Management*, 29 Mass.App.Ct. 45, 557 N.E.2d 81 (1990) (disqualification deemed premature).

Because of the prospect of Mr. Siguel's testimony, however, this court ORDERS plaintiff to obtain co-counsel to assist him in the preparation of this case. Should Mr. Siguel's testimony be required, co-counsel may then represent plaintiff in the event of disqualification.

## CONCLUSION

Defendant's motion for disqualification (Docket Entry # 74) is therefore DENIED

---

**5.** Although not adopted in Massachusetts, the Ethical Considerations, "form a 'body of principles' on which the 'Disciplinary Rules,' as adopted, 'are to be interpreted.'" *Borman v. Borman*, 378 Mass. 775, 393 N.E.2d 847, n. 16 (1979) (citation omitted).

without prejudice. Plaintiff is ORDERED to obtain co-counsel to assist in the preparation of this case on or before May 18, 1991.