## ADOPTION OF ERICA.

Essex. September 4, 1997. - October 31, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Attorney at Law,* Attorney-client relationship, Conflict of interest, Disqualification. *Conflict of Interest.*

A judge of the Probate Court erred in disqualifying the attorney representing the child in a proceeding under G. L. c. 210, § 3, to dispense with parental consent to adoption, where the findings of fact on which the judge relied in concluding the attorney had a conflict of interest arising from a previous representation, was not zealously representing her client, or created an appearance of impropriety were not supported by any evidence. [58-64]

This court adopted the "substantial relationship" test to evaluate a claim that an attorney should be disqualified because of a conflict arising from the representation of a former client, that is, current representation must be adverse to the interests of the former client in the same or a substantially related matter. [61]

This court stated that, before a judge disqualifies an attorney, particularly in cases involving the legal status of children, the record must be clear that there is a substantial risk of material and adverse effects of the continued representation on the interests of the present or a former client. [65-66]

PETITION filed in the Essex Division of the Probate and Family Court Department on September 23, 1992.

A motion to review a potential conflict of interest was heard by *Edward J. Rockett,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John E. Bowman, Jr.* (*Katherine M. Potter* with him) for Department of Social Services.

*Elizabeth B. Dunn* for the minor.

MARSHALL, J. A proceeding was commenced by the Department of Social Services (department) in the Essex Probate and Family Court to dispense with the need for a mother's consent to her child's adoption, G. L. c. 210, § 3. The child, whom we shall call Erica, challenges an order of a judge who concluded that, because Erica's attorney formerly represented Erica's

grandfather in other proceedings, the attorney had a conflict of interest. The judge disqualified the attorney and ordered that new counsel for Erica be appointed forthwith. We conclude that there has been no demonstration that Erica's attorney has a conflict of interest, and there is no other reason to justify her disqualification. See S.J.C. Rule 3:07, Canons 4, 5, 7 and 9, as appearing in 382 Mass. 778, 779, 784, 795 (1981). We vacate the order disqualifying the attorney and appointing new counsel.

1. We summarize the procedural history. Erica was born on June 27, 1988, when her mother, whom we shall call Dana, was seventeen years old. Eight months later, on February 28, 1989, the department filed a care and protection petition pursuant to G. L. c. 119, § 24, in the Salem Division of the District Court Department and received physical and legal custody of Erica. Erica was returned to the physical custody of Dana on March 2, 1989, and legal custody was returned on April 27, 1989. One year later, on April 23, 1990, the department filed a second care and protection petition in the Salem Division of the District Court and again received temporary physical and legal custody of Erica. On June 7, 1990, Erica was returned to the physical custody of Dana, and the petition was dismissed in September, 1990. In December, 1990, the department filed a third care and protection petition in the same court and once again received physical and legal custody of Erica. Since that time, Erica (then two and one-half years old) has been in the care and protection of the department. She has resided continuously with the same foster family. Erica is now nine years old.

At the commencement of the second care and protection proceeding in April, 1990, Elizabeth B. Dunn was appointed by a judge in the District Court to represent Erica. At the time of her appointment as Erica's attorney, Dunn advised the District Court judge that she formerly had represented Erica's maternal grandfather in proceedings in the Salem District Court.[1] The department, a party to the proceedings, did not object to the appointment of Dunn. Dunn's representation of the grandfather concluded in 1988, prior to Erica's birth and, of course, prior to the commencement of any of the proceedings involving Erica. According to Dunn, she had no contact with Erica's grandfather

---

[1]Specifically, Dunn had represented the grandfather in a care and protection proceeding involving Dana and her siblings, and later, when the department brought a petition under G. L. c. 210, § 3, to dispense with the grandfather's consent to the adoption of Dana's siblings (but not Dana).

after 1988, Erica has never met her grandfather, and the grandfather has not participated in any of the proceedings involving Erica.

On September 23, 1992, the department commenced this action in the Essex Probate and Family Court to dispense with the need for Dana's consent to Erica's adoption. G. L. c. 210, § 3. On December 7, 1992, the department, cognizant that Dunn formerly had represented the grandfather, filed a written motion to appoint Dunn as counsel for Erica. The motion was allowed.

On July 19, 1995, the department filed two motions seeking the appointment of two different guardians ad litem for Erica, one "investigative" and the other as a "next friend." In support of its motion requesting the appointment of an investigative guardian ad litem, the department stated that Erica "was reporting conflicting things about her desires to return to her mother." The motion was denied. In its motion seeking the appointment of a "next friend" guardian ad litem, the department argued that a "next friend" could represent Erica's best interests, "which may be contrary to what the minor child requests verbally." The judge appointed a "next friend" guardian ad litem, but for the sole purpose of determining whether Erica's psychotherapist-patient privilege should be waived.

On April 24, 1996, the department renewed its motion for the appointment of an investigative guardian ad litem because Erica "continues to report different things to various collaterals involved in her case." On May 3, 1996, the judge allowed the department's motion; the guardian ad litem who previously had been appointed for the limited purpose of determining if Erica's psychotherapist-patient privilege should be waived was appointed to perform the investigative function. During her ensuing investigation, the guardian ad litem was informed that Dunn formerly had represented Erica's grandfather. In light of this new — to her — information, on August 13, 1996, the guardian ad litem filed a "motion for hearing to review potential conflict of interest." There was no claim by the guardian ad litem that Dunn had not served her client well, or had been anything other than zealous in her representation of Erica.

On September 10, 1996, a brief, nonevidentiary hearing was held before the judge to consider the guardian ad litem's motion. The same day the judge ordered that Dunn withdraw as counsel and that new counsel be appointed to represent Erica. The judge made no findings in support of his order. He wrote

on a copy of the motion filed by the guardian ad litem that it was allowed "for the reason that there is the appearance of impropriety." Dunn filed a motion for reconsideration of the disqualification order. In the alternative, she requested that the judge hold an evidentiary hearing and issue specific findings. On October 16, 1996, without a further hearing, the judge denied the motion.

Erica filed a timely notice of appeal challenging both the September 10, and October 16, 1996, orders. On November 27, 1996, a single justice of the Appeals Court stayed the appointment of new counsel for Erica on the condition that the appeal be handled expeditiously.

On December 20, 1996, at the request of the judge, the department submitted written "proposed findings of fact and conclusions of law." On January 2, 1997, the judge issued a further order and memorandum containing findings of fact and conclusions of law. He again ordered that Dunn's appointment as counsel for Erica be struck and that new counsel be appointed forthwith.

Erica filed a timely appeal from the order of January 2, 1997. We transferred the appeal to this court on our own motion.

2. Whether the judge was correct in determining that Dunn should be disqualified and a new attorney appointed to represent Erica, must be resolved in light of our recognition that a court should not lightly interrupt the relationship between a lawyer and her client. "[D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman* v. *Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982), quoted with approval in *Masiello* v. *Perini Corp.*, 394 Mass. 842, 848 (1985). See C.W. Wolfram, Modern Legal Ethics § 7.4.1 (1986). We approach this difficult problem recognizing that the constraints on an attorney because of a conflict of interest arising from her former representation of a client are ill-defined, in part because neither S.J.C. Rule 3:07, nor the ABA Model Code of Professional Responsibility adopted in 1969 on which our disciplinary rules are based,[2] specifically addressed the issue.[3] See 1 G.C. Hazard & W.W.

---

[2]See S.J.C. Rule 3:07 (2), 382 Mass. 768, 769 n.1 (1981).

[3]In contrast, Rules 1.9 and 1.10 of the Massachusetts Rules of Professional Conduct adopted by this court on June 9, 1997, to take effect on January 1,

Hodes, The Law of Lawyering § 1.9:202, at 306, 306.1 (2d ed. 1990 & Supp. 1994).

We consider first the findings of fact by the judge. Erica challenges numerous findings on the ground that they are not supported by any evidence. There was no evidentiary hearing on the guardian ad litem's motion. Only Dunn submitted an affidavit in connection with that motion.[4] The judge identified two areas of conflict between Dunn and her client: first, the judge stated that Erica "repeatedly" has stated that she wished to remain in her current foster home and be adopted by her foster family, and that, "[n]otwithstanding the desires of the child," Dunn repeatedly advocated that Erica be returned to Dana. There is no evidence to support those findings.

Second, the judge states that Dunn took a position adverse to her client because Dunn had "access to records and information about [Erica's] family she would otherwise not have been entitled to" and that she "*may* have developed sympathies toward the minor child's mother [that] *could* directly conflict with Attorney Dunn's ability to zealously represent the minor child" (emphasis supplied). The "access to information" and "sympathies" toward Dana, the judge concluded, were the consequence of Dunn's former representation of the grandfather. There is no evidence that Dunn had any "sympathies" toward Dana, or that her access to any records she may have had (no records are specified) improperly influenced her representation of Erica. We conclude that the findings of fact on which the judge relied in reaching his conclusion are not supported by any evidence.

To reach his decision, the judge relied principally on S.J.C. Rule 3:07, Canon 5, DR 5-105 (A)-(C), as appearing in 382 Mass. 781 (1981), quoted in the margin.[5] Canon 5 by its terms generally applies to the more acute conflicts that arise with the

---

1998, and Rules 1.9 and 1.10 of the ABA Model Rules of Professional Conduct in 1983 explicitly address conflicts of interest arising from former client representation. See note 7, *infra*, and accompanying text.

[4]The judge's findings, in large part, adopt verbatim proposed findings of the department filed three and one-half months after the probate judge first disqualified Erica's attorney. We do not, generally, suggest that courts may not adopt proposed findings submitted by one party and reject those of another. See *Cormier* v. *Carty*, 381 Mass. 234, 236-237 (1980). Here, however, the department's proposed findings of fact were not based on any evidentiary record and consist, in large part, of argument by the department.

[5]Supreme Judicial Court Rule 3:07, DR 5-105 (A)-(C) provides:

simultaneous representation of clients who have adverse interests. Here, it is not disputed that Dunn's representation of the grandfather terminated in 1988, two years prior to her appointment as Erica's counsel in 1990; her conflict of interest, if any, arises from her successive representation of different clients. See *Bays* v. *Theran*, 418 Mass. 685, 691 (1994); *Masiello* v. *Perini Corp.*, *supra* at 847. Canon 5 has limited application to Dunn's representation of Erica, and we find the probate judge's reliance on Canon 5 unpersuasive.

We have recognized that when an attorney has ceased to represent a client, a conflict of interest may arise in representing a new client because of the attorney's continuing duty to preserve a former client's confidences: "The conflict of interest in representing a current client with interests adverse to those of a former client arises from the attorney's duty under Canon 4[6] to preserve his client's confidences and secrets. Even after termination of the attorney-client relationship, a lawyer remains

---

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105 (C).

"(C) In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

[6]Supreme Judicial Court Rule 3:07, Canon 4 DR 4-101 (B) provides:

"Except when permitted under DR 4-101(C), a lawyer shall not knowingly:

"(1) Reveal a confidence or secret of his client.

"(2) Use a confidence or secret of his client to the disadvantage of the client.

"(3) Use a confidence or secret of his client for the *advantage* of himself or of a third person, unless the client consents after full disclosure" (emphasis supplied).

By its plain language, DR 4-101 (B) would appear not to apply to this case: the claim here is that Dunn might use a confidence or secret of her former client, the grandfather, to the *disadvantage* of her present client, Erica. As we discuss below, however, courts have drawn on this disciplinary rule to examine claims of a conflict of interest adverse to a present client.

bound by the Code [of Professional Responsibility] to preserve these confidences." *Bays, supra* at 691, quoting *Masiello, supra* at 847. Because not every successive representation implicates Canon 4, courts, generally, have developed two criteria to test a claim that an attorney should be disqualified because of a conflict arising from the representation of a former client. First, the current representation must be "adverse" to the interests of the former client. Second, the matters of the two representations must be "substantially related." See *Bays, supra* at 691; *Masiello, supra* at 848 n.5.

We have often discussed the substantial relationship test, but have never adopted it. In each case in which the successive representation by an attorney has been challenged, we have reached our conclusion that disqualification was, or was not, appropriate on different grounds. See *Bays, supra* at 692; *Wellman* v. *Willis*, 400 Mass. 494, 498 (1987); *Masiello, supra* at 848. We apply the substantial relationship test here to test the claim of Dunn's conflict of interest. In light of the sparse record, there is no alternative ground on which to evaluate the judge's order of disqualification. We are also mindful that the new Massachusetts Rules of Professional Conduct specifically incorporate the test.[7]

Applying the substantial relationship test to this case, we conclude on this record that the disqualification of Dunn was

---

[7]Rule 1.9 of the Massachusetts Rules of Professional Conduct provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

We recognize that even the new rule does not directly address the adverse interests of a *present* client: "Rule 1.9 concerns loyalty to the client in cases of serial representation; its protections are for the benefit of *former* clients." 1 G.C. Hazard & W.W. Hodes, The Law of Lawyering § 1.9:101, at 289 (2d ed. 1990), commenting on the parallel rule contained in the ABA Model Rules of Professional Conduct adopted in 1983. In comparison, Restatement (Third) of the Law Governing Lawyers (Proposed Final Draft No. 1 1996), is intended to be more comprehensive. Section 213 of the Restatement states: "a lawyer who has represented a client in a matter may not thereafter represent another client in the same or a substantially related matter in which the interests of the former client are materially adverse." The drafters of the Restatement comment that § 213 applies to "situations in which a lawyer represents a present client in a matter in which there is a substantial risk of material and adverse effect on the interests of *the present or a former client*" (emphasis supplied). We interpret the scope of both DR 4-101 (B) and rule 1.9 to encompass the adverse effect on the interests of a former and the present client.

not warranted. First, we shall not assume, in the absence of any evidence on the subject, that the grandfather's interests are somehow "adverse" to Erica's, or that he necessarily would side with Dana "against" Erica. Dunn states that the grandfather has not been involved in Erica's life or her upbringing. It is too speculative to reason that simply because there is a biological connection between the grandfather, Dana, and Erica, the interests of the grandfather and Erica are "adverse" in this G. L. c. 210, § 3, proceeding.

Second, we cannot conclude that the former and current matters are "substantially related." In deciding whether sequential matters are substantially related, some courts have focussed on the subject or factual contexts of the former and current matters. See, e.g, *Trone* v. *Smith*, 621 F.2d 994, 998 n.3 (9th Cir. 1980); *General Elec. Co.* v. *Valeron Corp.*, 608 F.2d 265, 267 (6th Cir. 1979), cert. denied, 445 U.S. 930 (1980). Other courts have adopted a stricter standard, requiring the showing of a relationship between the issues of the two matters. See, e.g., *National Souvenir Ctr., Inc.* v. *Historic Figures, Inc.*, 728 F.2d 503, 517 (D.C. Cir.), cert. denied sub nom. *C.M. Uberman Enters., Inc.* v. *Historic Figures, Inc.*, 469 U.S. 825 (1984); *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corp.*, 518 F.2d 751, 754 (2d Cir. 1975). In *Chrysler Motors*, the court held that a substantial relationship between issues will be found only if the relationship is "patently clear"; *id.*, disqualification of an attorney will be granted, that court later elaborated, only if the issues involved were "identical" or "essentially the same." *India* v. *Cook, Indus.*, 569 F.2d 737, 740 (2d Cir. 1978). We need not decide whether we would require inquiry into the factual similarities between the two matters or would focus on similarities of the issues. Nor need we determine whether the relationship need be identical. We are persuaded that there has been no showing of a relationship, let alone any substantial relationship, between the matters in which Dunn formerly represented the grandfather and this proceeding. Dana was a minor at the time Dunn represented the grandfather, Dana was not a party in that G. L. c. 210, § 3, proceeding, and her involvement in the care and protection proceeding in which Dunn represented the grandfather was apparently minimal. Erica, the subject of these proceedings, was not yet born when the former matters were concluded, and the issue involved here, the fitness of Dana as her parent, obviously did not arise directly or indirectly in the matters in which Dunn represented the grandfather.

Moreover, although the judge found that Dunn had acquired access to information she would not have otherwise been entitled to during the course of her representation of the grandfather, there is no showing that any such confidential information has been or might be disclosed by Dunn in a breach of her attorney-client relationship with the grandfather, or that Dunn is using any confidential information to the detriment of Erica. We encourage deference to an attorney's best judgment as to whether her representation of a client brings her into conflict with any provisions of the disciplinary code. See *Wellman, supra* at 502; *Gorovitz* v. *Planning Bd. of Nantucket*, 394 Mass. 246, 250 (1985); *Borman* v. *Borman*, 378 Mass. 775, 788 (1979).[8] Dunn has been insistent that she has no conflict of interest in representing Erica, and absent any evidence on the subject, we shall not assume that she has disclosed or used any confidential information of her former client, or that she will do so.

We consider the other ground on which the judge based his order to disqualify Dunn. The judge concluded that Erica is entitled to "zealous representation" by Dunn, citing to S.J.C. Rule 3:07, Canon 7, DR 7-101 entitled, "Representing a Client Zealously." We agree. But a review of the record does not inform us in what respect zealous representation by Dunn on behalf of Erica has not occurred or will not occur. The department claims that Dunn may have advocated a closer relationship between Erica and Dana, contrary to the Erica's wishes. In other recent representations to the judge, the department stated that Erica is ambivalent and has expressed conflicting desires to be with both Dana and her foster family. Even were it clear, which it is not, that Erica wants to terminate her relationship with Dana, it would not necessarily follow that Dunn should be disqualified, or that any advocacy on her part to strengthen Erica's relationship with Dana flows from any conflict of interest because of Dunn's former representation of Erica's grandfather.[9] Charges of conflict of interest or failure to represent a client

---

[8]"Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation . . . . Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question." Comment [15] to Rule 1.7 of the Massachusetts Rules of Professional Conduct. See rule 1.9 comment [13].

[9]Even where it is undisputed that a child and her attorney disagree, the law is unclear as to whether the attorney is always bound by her minor client's

zealously warrant searching review before a disqualification order can be sustained. On the record before us, we conclude that that standard has not been met.

Finally, in his initial order, the judge said that he was disqualifying Dunn because of the "appearance of impropriety." See S.J.C. Rule 3:07, Canon 9, as appearing in 382 Mass. 797 (1981) ("A Lawyer Should Avoid Even the Appearance of Professional Impropriety"). We have referred to Canon 9 to consider whether the disqualification of an attorney is required in a case involving successive representation. *Wellman, supra* at 502-503. See Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1326 (1981) ("Canon 9 has usually led to disqualification only in the context of conduct covered by another ethical standard. Its most common use has been in tandem with Canon 4 in the confidentiality analysis required in successive representation cases"). Because there is no showing that Dunn has violated any ethical standard under Canon 4, 5, or 7 we conclude that a statement of "appearance of impropriety" is not sufficient to support the order for her disqualification.[10]

We have noted our concern about the high cost to litigants

decision when the attorney feels that the child's decision is not in her own best interest. See, e.g., Elder, The Role of Counsel for Children: A Proposal for Addressing a Troubling Question, 35 B.B.J. 6 (Jan./Feb. 1991); Comment, Speaking for a Child: The Role of Independent Counsel for Minors, 75 Cal. L. Rev. 681 (1987); Edwards & Sagatun, Who Speaks for the Child?, 2 Univ. Chi. L. Sch. Roundtable 67, 81-84 (1995). We are particularly hesitant to conclude that a difference of opinion between what a young child such as Erica expresses as her wish and the position of her attorney necessarily suggests a conflict of interest. "The notion that an attorney might zealously advocate for a result opposed by the client clearly sets the representation of children apart from the normal context in which attorneys operate." Wu, Conflicts of Interest in the Representation of Children In Dependency Cases, 64 Fordham L. Rev. 1857, 1861 (1996).

[10]The "appearance of impropriety" has been described as a "nebulous" standard that has been "rejected by most courts as a sole basis for disqualification." 1 G.C. Hazard & W.W. Hodes, *supra* at § 1.9:105, at 294-295. The Massachusetts Rules of Professional Conduct avoid the term "appearance of impropriety"; and comments to rule 1.9 reflect our concern about the vagueness of the term: "First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since 'impropriety' is undefined, the term 'appearance of impropriety' is question-begging." Rule 1.9 comment [5].

and to the court system occasioned by motions to disqualify attorneys, especially when such motions are used as harassment and dilatory tactics. See *Gorovitz* v. *Planning Bd. of Nantucket,* *supra* at 250 & n.7; *Borman* v. *Borman, supra* at 787. In this case the issue of Dunn's potential conflict of interest was raised by the guardian ad litem. While we have no reason to conclude that any harassment or dilatory tactic was intended by the guardian ad litem, any attempt to disqualify an attorney is especially troublesome in a case that involves the resolution of a child's future family life. Erica was two years old when the department received legal and physical custody of her; her status has been indeterminate for the past seven and one-half years. The consideration of Dunn's disqualification, alone, has resulted in a delay in resolving Erica's status of more than another year to date. Childhood is fleeting, and the hardship caused to a child by the disqualification of her attorney may include delay, losing a relationship of trust and confidence with her lawyer and the difficulty of reestablishing such a relationship with a second lawyer, after being "abandoned" by the first. Moreover, if Dunn is disqualified, she may be inhibited from conferring with Erica's new counsel lest she reveal to new counsel any of the claimed confidential information that she purportedly received from her former client.[11] Bringing new counsel into the case at this late date would likely cause severe consequences for Erica.

Before a judge concludes that the representation of a child is "adverse" to the interests of a former client, or that "a substantial relationship" exists between the present and former representation particularly in cases involving the legal status of children, the record must be clear that there is a substantial risk of material and adverse effect on the interests of the present or a former client. See Restatement (Third) of the Law Governing Lawyers § 213 comment a, at 709 (Proposed Final Draft No. 1 1996). A difference of opinion between counsel for the child, counsel for the department, or indeed, the judge, falls far short of any such standard. We are troubled by the department's questioning of Dunn's loyalty to her client more than seven

---

[11]"Disqualification has very serious consequences for both client and lawyer. The client must obtain new counsel, who must be brought 'up to speed.' To make matters worse, new counsel may be barred from using the work product of disqualified counsel, in order to 'cure' the taint, if the work product reflects confidential information." 1 G.C. Hazard & W.W. Hodes, *supra* at § 1.9:112, at 304.

years after her appointment, an appointment that had been sought by the department itself and hitherto never questioned. We recognize that Dunn has advocated a position on behalf of Erica that is contrary to the outcome sought by the department. That is insufficient to warrant a claim that Dunn has a conflict of interest or that she is not advocating her client's interests zealously.

The order striking Dunn's appointment as counsel and appointing new counsel is vacated. The rescript of this court shall issue forthwith. Mass. R. A. P. 23, as amended, 367 Mass. 921 (1975). All proceedings required to conclude this G. L. c. 210, § 3, matter shall be expedited.

*So ordered.*