Fremont-Smith, J.
INTRODUCTION
Defendant Dana-Farber Cancer Institute, Inc. (“Dana Farber”) seeks reconsideration of this Court’s denial of its previous motion to disqualify plaintiff Seema Singh Chauhan’s (“Chauhan”) counsel, Schwartz, McKenna & Lynch. Specifically, Dana Farber contends that attorney Mary Jane McKenna (“Mc-Kenna”) represented Dana Farber in a previous lawsuit which presented issues that are substantially related to her current representation of plaintiff in the instant case, and that plaintiffs interests in this action are materially adverse to Dana Farber’s interest.
After a hearing, and for the reasons set forth below, the Defendant’s Motion for Reconsideration is DENIED.
STATEMENT OF RELEVANT FACTS
In 1989, Dana Farber retained attorney McKenna to represent it in a medical malpractice action filed against it, Berger v. Bergsagel, et al., Civ. No. 89-3642 (Middlesex Super. Ct.). The plaintiff is that case was a patient who had been diagnosed with Hodgkin’s Disease who filed suit against Dana Farber and a number of its doctors, contending that his receipt of non-irradiated blood products resulted in his development of Graft Versus Host Disease, which ultimately led to his demise. The issue in the Berger case, as stated by Leonard Simon (“Simon”), Berger’s attorney in that case in an affidavit filed in this case, was “whether or not the blood products administered to Jason Berger should have been irradiated.” According to Simon’s affidavit, this was the only issue litigated against Dana Farber in that case. The case was settled in 1992, at which time McKenna ceased her representation of Dana Farber.[1]
In 1999, McKenna began her representation of Chauhan in the instant case. Chauhan, who had presented herself to Dana Farber in 1986, was diagnosed with Chronic Myelogenous Leukemia. In an effort to treat the Leukemia, Dana Farber harvested stem cells from Chauhan, who was informed that Dana Farber would store indefinitely the cells so that they would be available to her during the course of her treatment. However, Dana Farber either lost or destroyed Chauhan’s stem cells. Chauhan is now in the advanced stages of her illness, and in the instant action, seeks damages for breach of contract, bailment, conversion, and negligence.
The issue presented in the instant case is whether McKenna’s prior representation of Dana Farber, and her present representation of Chauhan, are representations with respect to "substantially related” matters, so that she should be barred from representing Chauhan in this case.
DISCUSSION
The Supreme Judicial Court has recognized that when an attorney has ceased to represent a client, a conflict of interest may arise in representing a new client against the former client because of the attorney’s continuing duty to preserve a former client’s confidences. Adoption of Erica, 426 Mass. 55, 60 (1997). Even after the termination of the attorney-client relationship, a lawyer remains bound by the Code of Professional Responsibility to preserve these confidences. Id. at 60-61. Not every successive representation raises this problem, however, and courts have developed two criteria to test whether an attorney should be disqualified because of a conflict arising out of the representation of a former client. Id. at 61. First, the current representation must be "adverse” to the interest of the former client; and second, the matters involved in the two representations must be “substantially related.” Id.
It is undisputed that McKenna’s representation of Chauhan is “adverse” to her former client, Dana Farber, so the result turns on whether the two representations are "substantially related.”
In Adoption of Erica, supra, the Supreme Judicial Court reversed an order of disqualification in a contested adoption case, where the child's counsel had previously represented the child’s grandfather in proceedings before the Department of Social Services which related to the custody of the child’s older siblings. The Probate Court judge found that the attorney in the prior suit had access to records and information about the child’s family she would not otherwise have been entitled to, and might have developed a sympathy for the child’s mother which could conflict with her ability to zealously represent the child. The trial court concluded that there was, at the least, an appearance *660 of impropriety. The Supreme Judicial Court decided, however, that these findings of the trial judge were not supported by evidence either to the effect that she had sympathies toward the mother, or by evidence that any records to which she had had access, had improperly influenced her representation. Id. at 59. After noting that “disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary, id. at 58, the Court analyzed the legal precedents in other jurisdictions, pointing out that some courts have required a showing that the "substantial relationship" was “patently clear” for disqualification, while other courts have required a more stringent showing that the issues are “identical" or “essentially the same.” Id. at 62. The Court concluded that there was no need to determine whether the relationship need be identical, because there had been “no showing of a relationship, let alone any substantial relationship, between the matters in which [counsel] formerly represented the grandfather and this proceeding ...” Id. Similarly, in the instant case, it is clear that the issues are not identical, and it is far from “patently clear” that there is even any “substantial relationship” between the two cases.
As noted above, the issue in the Berger case was whether Dana Farber, and its doctors met the standard of good medical care, consistent with the state of medical knowledge at the time, which required that blood products administered to a plaintiff be irradiated.[2]
The instant case, however, presents the question of whether Dana Farber negligently or in bad faith disposed of the plaintiffs stem cells. Rather than malpractice, the case involves a question of negligent bailment. Although Dana Farber contends that both cases are substantially related because “both cases relate to issues of the adequacy of Blood Bank policies, the training of Blood Bank personnel, the supervision of Blood Bank personnel, and compliance with Blood Bank policies in connection with the processing of relevant products in the Blood Bank,” the above describes only a generalized, unspecific relationship similar to the type of relationship found to be insufficient for disqualification in Adoption of Erica.[3] To the extent Berger considered the practices and procedures of the Dana Farber Blood Bank, it focused on the specific issue of irradiated platelets. The issue of the training and supervision of Blood Bank personnel in this case would have nothing to do with whether Dana Farber’s doctors deviated from the standard of care with respect to irradiated platelets and the treatment of a patient with Hodgkin’s Disease.[4] While the affidavit of Dr. Kenneth Anderson also alleges that, as head of the Blood Bank, he engaged in confidential communications with McKenna, no specifics as to those confidential communications are provided. The situation is thus entirely dissimilar to that in Bays v. Theran, 418 Mass. 685 (1994), where specific confidential disclosures were identified which involved precisely the same issue in both cases. Id. at 686-87.
In the opinion of this Court, no substantial relationship under any of the tests contemplated in Adoption of Erica has been shown between Berger (which alleged that Dana Farber doctors committed malpractice with respect to irradiated platelets) and this case (which alleges that the Dana Farber Blood Bank misplaced or destroyed the plaintiffs stem cells).
Moreover, it is undisputed that Chauhan is seriously ill and her health is rapidly declining. Her death is imminent, and any further delay in the prosecution of this case may prevent Chauhan from having her day in court. Indeed, this Court (Volterra, J.) refused to amend the tracking order in the instant case, and declined to move it from the “Fast Track" to the “Average Track” because “the plaintiff suffers from a life threatening disease which could take her life at any moment. Fundamental fairness demands a speedy trial.”
In addition to recognizing that disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary, Adoption of Erica, supra at 58, courts are concerned about the high cost to litigants and to the court system that are occasioned by motions to disqualify attorneys, and are concerned that such motions are frequently used as harassment and dilatory tactics. Id. at 65; Gorovitz v. Planning Board of Nantucket, 394 Mass. 246, 250 (1985).
As for delay, on November 3,1999, McKenna, acting as plaintiffs counsel, met and discussed the instant case with Dr. Stephen Sallan, Dana Farber’s Chief of Staff. At the conclusion of the meeting, Sallan took McKenna to see Richard Boskey, Dana Farber’s in-house counsel. No explanation is provided as to how in-house counsel Boskey could have been unaware of McKenna’s prior representation of Sallan in the Berger case, when Sallan was the one who escorted her to see him. Thereafter, on December 30, 1999, McKenna filed the complaint in the instant case. In the time since service of process, McKenna has taken seven depositions of Dana Farber employees. At the first deposition, moreover, a claims representative for Dana Farber’s insurer appeared, who was the same claims representative who had appeared in Berger. However, Dana Farber’s counsel did not move to disqualify McKenna until December 2000, some eleven months after it was served with the complaint, when its counsel was preparing for Dr. Anderson’s deposition. Thus, Dana Farber had ample reason to know of McKenna’s prior representation, but waited nearly a year to express any objection. “Such eleventh-hour maneuvers are disruptive to the efficient administration of justice and is costly.” Masiello v. Perini Corp., 394 Mass. 842, 850 (1985). Moreover, as in Adoption of Erica, new counsel could be barred from using the work product *661 of the disqualified counsel, in order to “cure” the taint, if the work product reflects confidential information. Adoption of Erica, supra at 65, n. 11. At the hearing defendant’s counsel indicated that, if disqualification were ordered, Dana Farber might well insist that all of the extensive discovery taken to date be redone because it was “tainted.” Such delay would be particularly prejudicial given the precarious health of the plaintiff.
Thus, the Supreme Judicial Court’s observation in Adoption of Erica, supra, that disqualifying counsel and bringing in new counsel in that the litigation would “likely cause severe consequences to [the plaintiff],” is a fortiori true in the instant case. While the Supreme Judicial Court in Adoption of Erica was concerned with the fleeting nature of childhood and the potential for long delay in hiring new counsel, here the fact that plaintiff is dying creates a very real possibility that a new counsel would not have the opportunity to even interview Chauhan prior to her death. Even if, had the motion for disqualification been brought in 1999, the question might have been considered a close one, where, as here, there has been significant delay and there is a real danger that disqualification of McKenna now could result in Chauhan’s claims never advancing to trial, fundamental fairness and equity weigh heavily against disqualification.
Finally, where the need for disqualification is not clear, courts are encouraged to defer to an attorney’s own best judgment as to whether her representation of a client brings her into conflict with any provisions of the disciplinary code. Adoption of Erica, supra at 63; Gorovitz, supra at 250; Borman v. Borman, 378 Mass. 775, 788 (1979). In her affidavit, McKenna has attested to her belief that there is no conflict of interest in representing Chauhan, and has further attested that she has not disclosed or used any confidential information of her former client. The rules of professional responsibility are largely self-executing, and courts rightly expect lawyers to know and comply with their provisions. Borman, supra at 787. Should an attorney be unsure of whether, in a given case, her conduct violates the rules, she should terminate the conduct or seek the advice of an appropriate ethics committee or Bar Counsel. Id. Here, no evidence is offered to indicate why this Court should not defer to McKenna’s own professional judgment.
For this, and the other reasons discussed above, this Court concludes that McKenna’s disqualification as counsel for Chauhan in the instant case is not warranted.
ORDER
For the reasons set forth herein, it is therefore ORDERED that the Defendant’s Motion for Reconsideration is DENIED.

At the time McKenna represented Dana Farber, she was employed as an attorney at Sloane & Walsh.

The theory of the case presented by Berger was that irradiated platelets would have prevented Graft Versus Host Disease, and the failure to irradiate his platelets amounted to negligence on the part of Dana Farber and its doctors.

The allegations of Dr. Kenneth Anderson’s affidavit are similarly non-specific.

As noted In attorney Simon’s affidavit, Berger did not pursue a theory of liability as to the Blood Bank and its director’s related supervisoiy responsibilities.