Brassard, J.
The plaintiff, Stephen Gerzof (“Gerzof’), brought this action in 1997 alleging that the defendant, Cignal Global Communications (“Cignal”) breached the terms of his investment contract after his interest in Cignal had been diluted. Gerzof now moves to disqualify counsel retained by Cignal in 2000 from the firm Holland & Knight LLP (“H&K”), on grounds that H&K’s representation of Gerzof in another matter during 1998 constitutes a conflict of interest. Specifically, Gerzof argues that during the course of the 1998 representation, H&K received confidential information regarding his investment knowledge and sophistication, and that because that information is an issue in the present lawsuit, disqualification is required.[2] In opposition, Cignal contends that H&K did not represent Gerzof, but rather a group of investors, which included the Estate of Julius Gerzof, Gerzof s late father. Cignal further argues that even if H&K did previously represent Gerzof, the two cases are not “substantially similar” to warrant disqualification, and H&K did not obtain confidences related to Gerzof. Having heard the parties and examined their submissions, the plaintiffs motion to disqualify counsel is DENIED.
Massachusetts courts have long recognized that when an attorney has ceased to represent a client, a conflict of interest may arise in representing a new client because of the attorney’s continuing duty to preserve a former client’s confidences. See Adoption of Erica, 426 Mass. 55, 60 (1997). Disqualification, however, is a drastic measure that should not be imposed except when absolutely necessary. Id. at 58. Rule 1.9 of the Massachusetts Rules of Professional Conduct provides that a lawyer who formerly represented one client shall not thereafter represent another in a “substantially related matter in which that person’s interests are materially adverse to the interests of the former client.” In order to enforce the Rule, the former client need not prove that the attorney actually misused the confidences to the client’s disadvantage. Bays v. Theran, 418 Mass. 685, 691 (1994). Rather, he must establish only that (1) an attorney-client relationship existed in the former legal representation,[3] and (2) the former and current representations are both adverse and substantially related. Id.
The primary purpose of the “substantially related” test embodied by Rule 1.9(a) is to preserve client confidences by not exposing an attorney to an “intolerably strong temptation” to betray them. Id. at 691. Courts using the “substantially related test” have taken differing approaches in its application, with some courts focusing on whether the issues involved are similar and other courts focusing on whether there is a factual overlap between the two matters. See Adoption of Erica, 426 Mass. at 58. Massachusetts has not yet determined which approach it will take. Id.
The court is satisfied that the two cases are not “substantially similar” with respect to issues or facts so as to warrant disqualification. The 1998 matter involved generic questions concerning the sale and disposition of real estate. According to the record, in 1998 Attorney William F. Machen (“Machen”) was retained by a partnership comprised of a group of investors, including the Estate of Julius Gerzof, that sought advice concerning an offer to purchase certain real estate it had received from another partnership. *300 According to Machen, “the advice sought by the Investors included interpretation of the terms, an explanation of the tax consequences, and an evaluation of other pros and cons of the offer.” Machen further states in his affidavit:
In the course of my representation of the limited partners,... I had several telephone conversations ■with the group. Most of these conversations either were with Robert Ralph, who served as the contact person for the Investors, or with multiple parties on conference calls. Gerzof participated in one or more of such conference calls. In addition, it is possible that I spoke to Dr. Gerzof individually, although my notes do not reflect such a conversation and I have no recollection of the substance of any such conversation ... I did not ask for, nor was I provided with any information concerning the personal finances of Dr. Gerzof. There is absolutely nothing in my file reflecting such information nor do I have any recollection of ever discussing Dr. Gerzof s financial situation.
Gerzof, however, maintains that during a telephone conversation with Machen, they not only discussed the status of the real estate offer, but Gerzofs options with respect to the investment. Gerzof states in his affidavit,
Specifically, I had to decide between taking cash or maintaining a continuing interest in the property. Accordingly, during the conversation I discussed with Machen other investments I then had and my financial situation, and asked for Machen’s advice as to which of the two options with respect to (the real estate] investment I should choose.
In contrast to the real estate issues raised in the 1998 matter, the instant case presents a contract issue, specifically, whether the terms of the investment agreement provide for dilution, or whether Gerzof should have known, irrespective of the agreement’s terms, that his interests were dilutable.[4] Cignal concedes that it has engaged in certain discovery regarding Gerzofs experience in dilution. Nothing in Gerzofs affidavit concerning the prior litigation, however, relates to the issue of dilution, Gerzofs experience regarding dilution, nor details of the extent of his communications regarding his personal investments. That both cases concern the subject of “investments” does not raise any temptation for H&K to use information allegedly provided by Gerzof during the prior representation.
When the need for disqualification is not clear, courts defer to an attorney’s own best judgment as to whether his representation of a client brings him into conflict with any provisions of the disciplinary code. See Adoption of Erica, 426 Mass. at 63; Borman v. Borman, 378 Mass. 775, 787 (1979). In the present case, no evidence is offered to indicate why this court should not defer to H&K’s professional judgment, particularly when Machen has no specific memory of having any conversation with Gerzof.[5] See Adoption of Erica, 426 Mass. at 61.
Without resolving the precise formulation of the test for “substantially related matter,” the court finds that Gerzofs claim against Cignal alleging breach of contract is not substantially related to his earlier encounters with H&K regarding an investment of his late father’s estate. For these reasons, the court ORDERS that Gerzof s motion to disqualify Cignal’s counsel is DENIED.

 In 1998, Holland &Knight became the successor law firm to Sherburne, Powers & Needham P.C.

 The court assumes, without deciding, that an attorney-client relationship between Gerzof and Holland & Knight existed.

 According to Cignal. the attorneys at Holland & Knight who have performed work on its behalf as to this case are Theodore F. Handelian, Joshua C. Krumholz, Elizabeth M. Mitchell, Pamela R. O’Brien, Jeanette McGamery and Wendy E. Millette.

 Additionally, Machen testifies in his supplemental affidavit that he:
[H]as not discussed my representation of the limited partners . . . with the attorneys of [H&K] involved with the representation of Cignal in this matter. I also have no intention of discussing my representation of the limited partners with other attorneys at [H&K]... At no time have I conveyed any confidential information concerning Dr. Gerzof, including, without limitation information relating to his personal fiances, investments or taxes, to any other person, nor do I have any intention of doing so in the future.