Lauriat, Peter M., J.
The plaintiffs, Claire M. Clair and Jane M. Clair (collectively the “plaintiffs”), as the executrixes of their husbands’ (James Clair and Mark Clair, respectively) estates, brought this action to challenge the disposition of corporate assets remaining after the 2007 sale of substantially all of the assets of a family-owned automobile dealership business. The plaintiffs have now moved to disqualify Murphy & King, P.C. (“Murphy & King”) as counsel for defendant Joseph P. Clair (“Joseph”) on the grounds that this representation presents a conflict of interest. Plaintiff Claire M. Clair has also filed a motion to compel the testimony and production of documents from James C. Jones, Esq. and Robert E. Richards, Esq. For the reasons set forth below, the plaintiffs’ motion to disqualify is denied. Plaintiff Claire M. Clair’s motion to compel is allowed.
BACKGROUND
For the purposes of these motions, the court recites the following background. In 2003, James, Joseph, Mark and Michael Clair each held an equal ownership interest in the Clair Group, a collection of successful automobile dealerships.[1] At all relevant times Robert E. Richards, Esq. (“Attorney Richards”), a shareholder in the Boston office of Hanify & King,[2] served as *471 outside corporate counsel to the Clair Group entities (the “Companies"). Daniel J. Lyne, Esq. (“Attorney Lyne”) at all relevant times represented defendant Joseph P. Clair.
In a 2006 amendment to a series of previously executed Stockholders’ Agreements, Clair International, Inc. and the Clair Limited Partnership (two of the approximately 26 Clair Group entities) equally owned and were the beneficiaries of two policies insuring the life of each of the four Clair brothers. The proceeds of the policies were to be used exclusively to fund the buy-out of any deceased shareholder’s stock pursuant to the Shareholders’ Agreements for Clair International and Clair Limited Partnership.
According to the defendants, in 2007, James learned that he was terminally ill. He requested that in connection with the 2007 sale of the Companies to Prime Motor Group, each brother would buy from Clair International and the Clair Limited Partnership the policies insuring his own life. Much of the underlying controversy between the parties concerns the terms and conditions of these transfers. According to the plaintiffs, the four brothers agreed that the purchase price of each policy would be its Interpreted Terminal Reserve (“ITR”) value which, the parties agree, is a generally accepted method of valuing a life insurance policy for an otherwise healthy insured. The defendants, on the other hand, argue that the purchase price was to be the fair market value of the policies at the time of the sale.
Mark died suddenly on December 1, 2007. According to the plaintiffs, at a special shareholders’ meeting on December 10, 2007, at which Attorney Richards was present, the remaining brothers, at James’s request, agreed to transfer ownership of the life insurance policies to the three surviving brothers and to Mark’s estate in exchange for their ITR values. The defendants contend that they agreed to James’s request with the understanding that the ITR values represented the fair market value of the policies. When James died on March 4, 2008, the policies paid $12 million tax-free to irrevocable life insurance trusts created by James prior to his death, and $12 million to Mark’s estate.
The plaintiffs claim that, for the next two years, Joseph and Michael, as well as Attorney Richards, routinely treated them as holding the same ownership interests as had their husbands, provided them with the Companies’ confidential financial statements, and involved them in various aspects of corporate decision making. This apparently cordial relationship deteriorated in the spring of 2009, when Joseph and Michael claimed ownership of the plaintiffs’ interests in the Companies. The essence of the defendants’ argument is that the proceeds from the insurance policies collected by the plaintiffs must be applied to buy out their respective ownership interests in the Companies pursuant to the buy/sell provision of the Stockholders’ Agreements. They argue that the plaintiffs have not, therefore, been shareholders in the Companies since the deaths of their husbands. In response, the plaintiffs filed this action against Joseph and Michael as well as the Companies, seeking, inter alia, a declaratory judgment with respect to their ownership rights.[3]
Defendants Clair International, Inc. and the Clair Limited Partnership subsequently counterclaimed against both Jane and Claire, both individually and in their capacities as executrixes of their husbands’ estates, seeking to compel the tender of their stock and ownership interests in the Companies and the return of monies paid in excess of the amounts to which the estates of their respective husbands were entitled.[4] The thrust of their argument is that, accepting the plaintiffs’ contentions, any difference between the actual value of the life insurance policies and the policy transfer price would be considered gifts to the estate, thus exposing the surviving brothers to large tax liabilities.[5] With respect to James, the counterclaim asserts that he breached his fiduciary duty to Clair International and the Clair Limited Partnership by purchasing insurance policies on his life from those entities for considerably less than their fair market value, thereby placing the other shareholders of Clair International at risk for personal tax liability should the transfers be deemed gifts and the loss of Clair International’s Subchapter-S tax status.
The Companies have identified Attorney Richards as a witness who:
may have information concerning the formation of the Companies, some aspects of the operation of the Companies, the Companies’ sale of assets to Prime Motor Group, the Stockholders’ Agreements and amendments to the Stockholders’ Agreements, interaction among and between the Clair brothers which he observed, and the Companies’ interaction with and treatment of the Estate of Mark. J. Clair and the Estate of James E. Clair, Jr. and their respective attorneys and advisors, among other potentially relevant subjects.
The plaintiffs subpoenaed Attorney Richards’s documents and deposition testimony in June 2010. Attorney Richards asserted the attorney-client privilege; plaintiff Claire M. Clair has now moved to compel his compliance.
On January 3, 2011, Murphy & King informed all counsel that Attorney Lyne had joined the firm as a shareholder. The plaintiffs’ counsel concluded that this raised a possible conflict of interest and brought the issue to the court’s attention at a January 14, 2011, litigation control conference. After Attorney Lyne refused the plaintiffs’ request to withdraw voluntarily or, in the alternative, to stay discovery, *472 the plaintiffs filed this motion as instructed by the court.
DISCUSSION I. Motion to Disqualify
The plaintiffs contend that Attorney Richards is a critical witness who is expected to provide testimony adverse to the defendants, and thus Murphy & King, through Attorney Lyne, cannot represent Joseph with undivided loyalty. As support therefor, they rely on Rule 3.7(b) of the Massachusetts Rules of Professional Conduct, which provides that: “A lawyer may act as advocate in a trial in which another lawyer in the lawyer’s firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.” The pertinent part of Rule 1.7(b) provides, inter alia, that: “A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer’s responsibilities to another client or to a third person, or by the lawyer’s own interests ...”
Rule 1.7(b) would be applicable if Attorney Richards’s testimony were to be in conflict with that of Joseph and/or witnesses testifying in his behalf. Comment 5 to Mass. R. Prof. Conduct states, in relevant part, that:
[I]f there is a substantial conflict between the testimony of the client and that of a lawyer or a member of the lawyer’s firm, the representation is improper. The problem can arise whether the lawyer is called on behalf of the client or is called by the opposing party.
The plaintiffs point in particular to documentary evidence that, following the deaths of James and Mark, Attorney Richards (1) provided to the plaintiffs detailed confidential information regarding the Companies, demonstrating that he recognized that they were shareholders and treated them as such for about two years: (2) participated in the drafting of the amendment to the Shareholders’ Agreements that do not provide for the redemption of Claire’s and Jane’s ownership interests in the Companies; and (3) handled and endorsed the Clair brothers’ agreement to purchase their life insurance policies from Clair International and the Clair Limited Partnership for their ITR values. The plaintiffs assert that this evidence is sufficient to establish that Attorney Richards’s testimony is in substantial conflict with the claims and defenses asserted by Joseph. The defendants contend that there is no conflict of interest and, in any event, any assertion that Attorney Richards’s testimony will be adverse to that of Joseph Clair is, absent additional discovery, purely speculative.
A court may not lightly disrupt the relationship between lawyer and client: such a motion requires searching review before a disqualification order is warranted. See Adoption of Erica, 426 Mass. 55, 58 (1997); see also Slade v. Ormsby, 69 Mass.App.Ct. 542, 545 (2007) (“In deciding whether a disqualification of counsel is warranted, a judge must reconcile the right of a person to counsel of his choice on the one hand, and the obligation of maintaining the highest standards of professional conduct and the scrupulous administration of justice, on the other”). “[D]isqualification ... is a drastic measure which courts should hesitate to impose except when absolutely necessary.” Adoption of Erica, 426 Mass at 58. “There must be a showing first that counsel’s testimony on behalf of the opponent will be prejudicial to counsel’s client.” Borman v. Borman, 378 Mass. 775, 792 (1979). “[Disqualification may rightly be sought by opposing counsel even though he/she is not representing the aggrieved client." Kevlik v. Goldstein, 724 F.2d 844, 848 (1st Cir. 1984).
Where, as here, opposing counsel seeks disqualification, the court must “be alert that the Canons of Ethics are not brandished for tactical advantage.” Serody v. Serody, 19 Mass.App.Ct. 411, 414 (1985). The burden lies squarely with the party seeking disqualification to establish the need to interfere with the attorney-client relationship. Steinert v. Steinert, 73 Mass.App.Ct. 287, 288 (2008). Although by no means insignificant, the impact on the client and the legal process lessens when the attorney/witness is not himself trial counsel, but rather a member of trial counsel’s firm. See, e.g., Borman, 378 Mass. at 787.
The problem with the plaintiffs’ argument as currently advanced is that since there has been only limited discovery, it is not clear that Attorney Richards’s testimony would be “in substantial conflict” with Joseph’s testimony, because neither Joseph nor Attorney Richards has been deposed. Hence, the nature of their testimony is purely speculative. Where the record before the court is as sparse as it is here, “a disqualification order is either unnecessary or premature.” Byrnes v. Jamitkowski, 29 Mass.App.Ct. 107, 110 (1990). See also Adoption of Erica, 426 Mass. at 65 (“the record must be clear that there is a substantial risk of material and adverse effect on the interests of the . . . client”). Because Attorney Richards’s testimony is presently a matter of conjecture, disqualification at this time is inappropriate. See, e.g., Steinert, 73 Mass.App.Ct. at 290. See also Borman, 378 Mass. at 791 (determination with respect to disqualification may be deferred until more is known).
II. Motion to Compel[6]
The course of discovery in this case has been less than smooth. The plaintiffs allege that Attorney Richards, as well as James C. Jones, Esq. (“Attorney Jones”), the Companies’ general counsel, have knowledge and are in possession of documents relevant to the policies, the ownership interests in the Companies, the sale of the Companies’ assets to Prime and the various stockholders’ agreements and amend *473 ments thereto. Therefore, on June 25, 2010, Claire served on them subpoenas duces tecum.[7]
In response, Attorney Richards asserted the attorney-client and/or work-product privilege at the Companies’ request, in particular with respect to requests regarding ownership, partnership and membership interests in the Companies from 2005 until the present. Although after some procedural skirmishes, plaintiffs took Attorney Jones’s deposition, they contend that nothing of substance was discovered due to multiple objections by defense counsel, again on the basis of the attorney-client privilege. As of the filing of this motion, Attorney Richards’s deposition has not been taken, the Companies have not produced any privilege logs and, according to the plaintiffs, have withheld a wide range of documents.
Claire now moves to compel production of certain information related to the Companies in the possession of Attorneys Jones and Richards that existed as of and after James’s death on March 4, 2008,[8] and all materials concerning the valuation, purchase and sale of the life insurance policies. She points out that, where the clients are the Companies, the privilege attaches to the Companies as a whole, not to the individual officers, directors, shareholders, members or partners. Claire argues that therefore she is entitled to any information to which James would have had access before his death. As to the period following his death, she argues that she in essence stands in James’s shoes, has the same rights as James would possess, and is privy to the privileged documents to which he would now be entitled. Finally, Claire contends that the defendants have waived the attorney-client privilege with respect to the life insurance policies because they have placed at issue the circumstances surrounding the purchase, valuation and sale of the policies in their counterclaims.
The defendants take the position that Claire cannot waive the attorney-client privilege because she conflates the Companies’ attorney-client privilege with that of James as an individual.[9] They argue that Claire did not “step into the shoes” of James where she did not assume any of his duties as an officer or director. They also contend that they did not waive the privilege with respect to materials concerning the sale of the life insurance policies because they did not place the Companies’ legal advice at issue.
The court agrees with Claire’s argument that, as executrix, she holds James’s privilege with respect to all communication with Attorneys J ones and Richards prior to James’s death. There is no dispute that Claire stands in James’s shoes. See, e.g., Turner v. Morsan, 316 Mass. 678, 688 (1944). There is also no dispute that the attorney-client privilege belongs to the Companies. See, e.g., Robertson v. Gaston Snow Ely & Bartlett, 404 Mass. 515, 522 (1989) (attorney for corporation does not by virtue of that capacity become attorney for shareholders, officers or directors). Attorneys Richards and Jones are described as corporate and general counsel for the Companies. As such, they represent the Companies, rather than the individual shareholders, and have information that all shareholders are entitled to obtain. The defendants thus cannot assert an attorney-client privilege with respect to communications between the attorneys and any member of the group in connection with the business of the Companies. See, e.g., Lavallee v. Shandor, 2000 WL 33159202 at *2 (Mass.Super. 2000) (Fecteau, J.).
The matter is more nuanced with respect to information and communication that occurred between the defendants and Attorneys Jones and Richards following James’s death. Claire’s argument that she is entitled to this information rests on her contention that she continued to be treated as, and therefore by implication was, a shareholder. But any determination of her status as a shareholder rests on precisely that information, particularly the deposition testimony of Attorney Richards, that she seeks to compel. The defendants have opposed the plaintiffs’ motion to disqualify Attorney Richards in part on the grounds that further discovery is required to ascertain if Attorney Richards’s testimony is adverse to their position. They cannot have it both ways.
The issues in this case center around disputes among the shareholders and their successors, and the information and documents possessed by Attorneys Richards and Jones must be equally available to all parties. See, e.g., Lavallee, 2000 WL 33159202 at *2. In any event, the fact that the Companies have identified Attorneys Richards and Jones as individuals who possess the information that they have described makes them available witnesses. They cannot avoid testifying at a deposition by asserting a blanket attorney-client privilege. See, e.g., Commonwealth v. Goldman, 395 Mass. 495, 498 (1985) (attorney may testify as to events which happen to be the topic of privileged communication without waiving the attorney-client privilege). At a minimum, the plaintiffs are entitled to explore the circumstances and claimed basis for invoking the privilege, as well as to be given a privilege log with respect to each and all documents that Attorneys Richards and Jones seek to withhold on the basis of an attorney-client privilege. See Mass.R.Civ.P. 26(b)(5) and Superior Court Standing Order 1-09 (3) (b). Accordingly, the motion to compel is allowed.
ORDER
For the foregoing reasons, Plaintiffs’ Joint Motion To Disqualify Murphy & King, P.C. as Counsel For Defendant Joseph P. Clair is DENIED without prejudice to later renewal upon completion of Attorney *474 Robert E. Richards, Jr. Plaintiff Claire M. Clair’s Motion To Compel Testimony From James C. Jones, Esq. and Robert E. Richards, Esq. is ALLOWED.

The court will refer to Joseph, Michael and the Clair Group entities collectively as “the defendants."

Hanify & King is now known as Murphy & King.

he Second Amended Complaint asserts claims for declaratory judgment (Count I); breach of fiduciary duty (Count II); accounting (Count III); trustee process attachment (Count IV); breach of contract (Count V); breach of the covenant of good faith and fair dealing (Count VI); specific performance (Count VII); and promissory and equitable estoppel—Jane Clair (Count VIII).

The counterclaim against Jane Clair asserts claims for breach of contract—specific performance (Count I); declaratory judgment (Count II); unjust enrichment (Count III); and conversion (Count IV). As against Claire Clair, defendants’ counterclaim asserts claims for breach of fiduciary duty (Count I); rescission (Count II); breach of contract—specific performance (Count III); declaratory judgment (Count IV); unjust enrichment (Count V); and conversion (Count VI).

The plaintiffs argue that they do not take this position, but rather contend that the transfer of the policies was a valid corporate action.

Because Claire Clair’s subpoenas are at issue here, she has filed the motion to compel. However the issues are the same with respect to Jane Clair’s contentions.

The areas of interest outlined in the subpoena include knowledge of all life insurance policies issued to all the Clair brothers, including, but not limited to, the issuance, purpose, ownership and sale of the policies; knowledge regarding the ownership, partnership and membership interests in all the Clair entities from 2005 until the date of the subpoena; knowledge regarding the 2007 sale to Prime Motor; knowledge regarding the valuations or appraisals of the Companies; knowledge regarding the wind-down and liquidation; knowledge regarding the assets and expenses of the Companies; and knowledge regarding the corporate governance of the Companies, including all meetings, agreements, amendments and by-laws. As to the production of documents, the subpoena lists, inter alia, all documents that relate in any way to the various life insurance policies; all documents concerning the ownership interests in the Companies from 2005; all “documents, notes, and communications concerning all corporate governance documents including, but not limited to, all Shareholders’Agreements, Stockholders’Agreements, Membership Agreements; Partnership Agreements, and By-Laws and all amendments, schedules, and addenda thereto, for the Companies”; all documents, notes and communications related to the 2007 sale, any valuations of the companies, tax-related documents, and the assets and liabilities of the Companies; and all “documents, notes, and communications concerning the minutes of shareholders’ meetings, stockholders’ meetings, members’ meetings, and partners’ meetings for the Companies from 2005 until the present.”

With respect to Jane Clair, this would include all materials that existed as of Mark Clair’s death.

As Claire points out, she is not trying to waive the attorney-client privilege with respect to James, but is asserting that, due to her position as executrix, she is privy to that to which James was or would be privy.