Sanders, Janet L., J.
The Gillette Company (Gillette) brought this action against four former employees alleging that they misappropriated Gillette’s trade secrets to develop a wet shaving razor for defendant ShaveLogic, LLC (ShaveLogic). The defendants have counterclaimed, alleging that Gillette sought to disrupt ShaveLogic’s relationships with potential partners and investors, then filed the present lawsuit in an effort to prevent ShaveLogic from becoming a competitor. Gillette now seeks to add another defendant, Chester Cekala, ShaveLogic’s general counsel, and also seeks a preliminary injunction against him. Although defendants do not oppose the motion to amend, they vehemently contest the need for any injunctive relief. After hearing and careful consideration of the parties’ submissions, this Court concludes that Gillette has failed to meet its burden under Packaging Industries v. Cheney, 380 Mass. 609, 617 (1980), and offers the following byway of explanation.
1. Cekala served as in-house counsel for Gillette from 1991 to 2006. After working for two other entities, he began at ShaveLogic in 2012. Like the other defendants, Cekala had a noncompetition agreement with Gillette, but that has long since expired. In April 2013, he became ShaveLogic’s general counsel. In that capacity, he has responsibility for negotiating a wide variety of agreements, participates in discussions with potential investors and partners, oversees human resources issues, and manages ShaveLogic’s patent and trademark portfolio.
2. Gillette alleges that Cekala has breached his fiduciary obligations to Gillette in that he has given legal advice to ShaveLogic in matters that are “substantially related” to matters which he worked on at Gillette. It notes that this is strictly prohibited by Massachusetts Rule of Professional Conduct 1.9. That rule is premised on the attorney’s continuing duty to preserve a former client’s confidences. In re Adoption of Erica, 426 Mass. 55, 60 (1997). Cekala responds that he is fully aware of his professional responsibilities and denied that he has violated them. His employment agreement with ShaveLogic explicitly recognizes that he must recuse himself from any matters which conflict with fiduciary obligations he owes prior employers, and he claims he has done exactly that. To the extent that the injunction seeks to enforce his ethical responsibilities, he maintains that it is entirely unnecessary. This Court agrees.
3. In support of its motion, Gillette focuses on three of its patents and cites emails and other documents it has obtained in discovery to support its contention that Cekala is rendering legal advice to ShaveLogic on substantially related matters. Cekala denies that he did any work on the patents while at Gillette, or that he has given advice to ShaveLogic which draws on confidential information that he obtained as a result of whatever he did for his former employer. The evidence to the contrary is not sufficient to show that Gillette is reasonably likely to success on the merits. Moreover, that an attorney has some familiarity with a former employer’s patent strategy or gives legal advice to his new employer as to the scope and validity of patents held by his former employer is not enough to disqualify him from rendering such advice.
4. The requirement that the moving party make a strong showing on the merits is particularly important where the injunction sought is as broad as the one proposed here. The order that Gillette proposes lists twenty patents (many of which have application dates that postdate Cekala’s departure from Gillette), and also extends to “all continuations, divisional and foreign counterparts” of those patents. It would preclude any legal advice regarding those patents, not only with respect to patent validity, but also on infringement and scope. This Court sees no basis for such abroad order, particularly since the evidence that Gillette presents as to the three patents is so thin.
5. The proposed order further contemplates a procedure whereby Gillette is notified of Cekala’s intent to render advice on those matters and is given an opportunity to object. Although the order does not state what occurs in the event of a disagreement, it presumably would require this Court to weigh in. Given the number of patents listed, this would be quite burdensome and require the Court to make difficult decisions as to whether the matter was related or not. At the hearing, Gillette suggested that any injunction would be largely “self-executing.” This is clearly not the case.
6. Gillette’s claim that it will be irreparably harmed without an injunction rests on the assertion that, having been given access to confidential Gillette information almost a decade ago, Cekala will inevitably disclose that information to ShaveLogic. This Court sees several problems with this position. First, Massachusetts courts have not embraced the doctrine of inevitable disclosure, since it has the potential for severely curtailing one’s employment opportunities in the absence of any express noncompetition agreement. Here, if the Court were to accept Gillette’s logic, Cekala would be effectively prevented from working in any legal position for a competitor in the shaving industry even though his noncompete agreement expired years ago. Second, Cekala left Gillette in 2005, strongly suggesting that any confidential information he had about Gillette’s patent strategy or its technology is out of date. Finally, much of the information related to patents is already publicly available. See comment 3 to Rule 1.9 (the use of information that has been disclosed to public cannot be the basis for disqualifying an attorney).
For these and for other reasons articulated in defendants’ Opposition, the Motion for a Preliminary Injunction is DENIED.